Doreen M. WHITE, Plaintiff-Appellant,

v.

EXCALIBUR INSURANCE COMPANY, Defendant-Appellee.

No. 77–2250.

United States Court of Appeals, Fifth Circuit.

July 18, 1979.

---

O. L. Crumbley, Manley F. Brown, Macon, Ga., for plaintiff-appellant.

Cubbedge Snow, Jr., Macon, Ga., A. Paul Cadenhead, T. Cullen Gilliland, E. Clayton Scofield, III, Atlanta, Ga., for defendant-appellee.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

When James Madison praised the benefits of federalism, he could not anticipate the problems that would be raised by the synergistic interaction on a complex industrial society of federal and state statutory plans having diverse aims. A federal statute, the Interstate Motor Common Carrier Act, 49 U.S.C. § 301 *et seq.*, makes motor carriers responsible for the torts of employees of the independent contractors from whom the carrier leases vehicles. Georgia has enacted a workmen's compensation law, and its statutes also govern the insurance obligations of motor carriers. We here consider whether a driver, who during his rest period was killed by the tort of a fellow worker then actually operating the vehicle aboard which both were employed, may recover in tort from the carrier or whether his remedy is limited to compensation. Concluding that motor carriers who are by federal law burdened with statutory employer liability for the acts of vehicle lessors are also entitled to the protection afforded employers by state law, we affirm the denial of relief.

## I.

Superior Trucking Company, a licensed interstate motor carrier, entered into a lease agreement with O. D. Crawford in May, 1973 under which Crawford agreed to provide Superior with trucks and drivers to be used in Superior's business. Among the provisions of this agreement was one purporting to establish the relationship of em-

ployer-independent contractor between Superior and Crawford.[1]

Terry Wright, who was appellant's son, and John Carroll Lindsey were working for Crawford as drivers, hauling merchandise for Superior pursuant to the lease. On December 17, 1973, while Lindsey was driving and Wright was asleep in the cab, their truck was involved in a collision, and Wright died in the ensuing fire.

Mrs. White brought a tort action in state court against Lindsey to recover for her son's wrongful death. After a jury trial, she was awarded $110,000. She then filed suit in an effort to collect the judgment from Excalibur Insurance Company, Superior's insurer.

There being no contested issues of fact, the district court determined that Mrs. White had no right to recover from Excalibur because Terry Wright was, by virtue of federal law, a statutory employee of Superior. As such, Wright was not a beneficiary of the Excalibur insurance policy issued in compliance with Ga.Code Ann. § 68–612 to protect "the public," and his mother's sole remedy against Superior was workmen's compensation. See Ga.Code Ann. § 114–103. The court declined to find an independent right of recovery in tort against Superior under federal law because it concluded that fellow employees were outside the scope of the protection Congress sought to confer on the public by 49 U.S.C. §§ 304 and 315. Moreover, Mrs. White could recover from the insurer under federal law only if she had obtained a judgment against the carrier, Superior. We agree with the legal conclusions of the trial judge in each of these respects.

## II.

Motor carriers had attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making them all nominally "independent contractors." See generally Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 1975, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169; American Trucking Associations, Inc. v. United States, 1953, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337; Alford v. Major, 7 Cir. 1972, 470 F.2d 132. In order to be certain that the public would be protected from the torts of these frequently insolvent operators, Congress in 1956 adopted amendments to the Interstate Motor Common Carrier Act requiring a motor carrier to assume "full direction and control" of leased vehicles. 49 U.S.C. § 304(e);[2] 49 C.F.R. § 1057.4(a)(4). See H.R.Rep.No.2425, 84th Cong., 2d Sess. (1956), reprinted in [1956] U.S.Code Cong. & Admin.News, pp. 4304, 4307. Because the

---

1. Section 9 of the contract provided as follows:
   Neither party hereto is the agent of the other and neither party shall have the right to bind the other by contract or otherwise. The parties intend to create by this contract the relationship of Carrier and Independent Contractor and not an employer-employee relationship. Neither the Contractor nor its employees are to be considered as employee or employees of the carrier at any time, under any circumstances.

2. That section reads as follows:
   (e) Subject to the provisions of subsection (f) of this section, the Commission is authorized to prescribe, with respect to the use by motor carriers (under leases, contracts, or other arrangements) of motor vehicles not owned by them, in the furnishing of transportation of property—
      (1) regulations requiring that any such lease, contract, or other arrangement shall be in writing and be signed by the parties thereto, shall specify the period during which it is to be in effect, and shall specify the compensation to be paid by the motor carrier, and requiring that during the entire period of any such lease, contract, or other arrangement a copy thereof shall be carried in each motor vehicle covered thereby; and
      (2) such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment and inspection thereof, which requirements may include but shall not be limited to promulgation of regulations requiring liability and cargo insurance covering all such equipment.

carrier now has both a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles. *Simmons v. King*, 5 Cir. 1973, 478 F.2d 857, 867.

While Mrs. White appears to concede that Lindsey as driver of the leased vehicle was a statutory employee of Superior, she argues that Wright was not actively engaged in Superior's business at the time of the accident and therefore was a stranger to the carrier. The distinction sought to be drawn between a driver on duty and operating the vehicle and a driver on duty and sitting on the right hand seat or asleep in the rest compartment is specious. Wright was not in a position comparable to being "at home asleep in his own bed." He was part of the two-man team actually engaged in operating the vehicle on Superior's business. The team is indispensable to continual vehicle operation for federal law generally permits each driver to work only ten hours at a time and then to obtain at least eight hours of rest. 49 C.F.R. § 395.-3(a) (1977). The activities of each of the pair during a single driving stint, including his rest period, are clearly within the course of his employment. We see no reason to distinguish Wright from Lindsey for purposes of his relationship to Superior merely because it was Lindsey's turn at the wheel. Had Wright not been asleep while resting and had he committed some tort, such as negligently tossing an object from the truck window injuring a pedestrian, Superior would have been liable for his acts. We therefore conclude that both drivers were statutory employees of Superior within the meaning of 49 U.S.C. § 304(e).

### III.

The statutory employee status created by federal law may affect employer-employee relationships under otherwise controlling state statutes where direction and control of the worker by the federally regu-lated employer are central to the regulatory program. *See, e. g., Hartford Accident & Indemnity Co. v. Major*, 1967, 81 Ill.App.2d 251, 226 N.E.2d 74. We have previously concluded that the Georgia Workmen's Compensation Law may be applied to such a mutation. In *Ward v. Kraftco Corp.*, 5 Cir. 1977, 559 F.2d 1215 (unpublished opinion, No. 77–1743, September 6, 1977) the plaintiff was a member of a two-worker driving team but was not driving at the time of the accident and was therefore in a position analogous to that of Terry Wright; we held that he was a statutory employee of the lessee-carrier under Georgia law, and that his sole remedy against the carrier and its insurer was under the Georgia Workmen's Compensation Law. *See* Ga.Code Ann. § 114–103. Similarly here, because Terry Wright was a statutory employee of Superior by virtue of 49 U.S.C. § 304(e), his mother is barred by Georgia law from seeking a remedy apart from workmen's compensation. Superior has workmen's compensation insurance, and has admitted its compensation liability to Mrs. White and, of course, to all statutory employees injured in its service.

This result is completely consistent with the policy underlying the federal law. Congress wished to impose on lessee-carriers responsibility for the operation of leased vehicles "as if they were the owners of such vehicles," 49 U.S.C. § 304(e)(2); H.R.Rep. No.2425, 84th Cong., 2d Sess. (1956), *reprinted in* [1956] U.S.Code Cong. & Admin. News, pp. 4304, 4309. To make them assume the burden of liability for the harm caused by their leased vehicles without according them the protection given employers under state substantive law would broaden their exposure to suit beyond that to which employers in fact are subject. We find no warrant for such strict liability in the federal law. *See, e. g., Wilcox v. Transamerican Freight Lines, Inc.*, 6 Cir. 1967, 371 F.2d 403, 404, *cert. denied*, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992.

Nor is this result solely one that benefits the carrier at the expense of lessor-employed drivers. Had Wright been injured

in any fashion during the course and scope of his employment, he would have had compensation protection from Superior. His direct employer's insolvency would not have jeopardized his rights. The total economic benefit conferred on all lessee-hired drivers by receiving workmen's compensation coverage may well exceed the detriment caused by denying them a tort remedy against the carrier for the negligence of fellow workers.

We are not unaware of the Georgia jurisprudence holding that an employer is not ordinarily obligated to provide workmen's compensation coverage to employees of his independent contractor. *See, e. g., Mosley v. George A. Fuller Co.*, 5 Cir. 1957, 250 F.2d 686; *Blair v. Smith*, 1947, 201 Ga. 747, 41 S.E.2d 133; *Travelers Insurance Co. v. Faulkner*, 1940, 63 Ga.App. 438, 11 S.E.2d 367; *United States Fidelity & Guaranty Co. v. Corbett*, 1923, 31 Ga.App. 7, 119 S.E. 921. However, the effort of the carrier and the vehicle lessor to create by contract an independent contractor relationship cannot operate to frustrate the federal design to impose responsibility on the carrier for acts of those who might otherwise be independent contractors. Because Congress has created the statutory employee status, and, as we have concluded, the carrier-lessee is deemed an "employer" for purposes of the Georgia Workmen's Compensation Law, the Georgia cases dealing with independent contractors are not applicable.

### IV.

In concluding that Wright was a statutory employee of Superior and was covered by Superior's workmen's compensa-

tion program, we have necessarily decided that he suffered no "actionable injury" to enable him to recover under Ga.Code Ann. § 68–612.[3] This Georgia insurance statute was enacted "for the protection of the public" by requiring motor carriers operating within the state to post a bond or file an insurance policy with the Public Service Commission ensuring their financial responsibility for injuries caused by their operations. To claim the benefit of the statute's provisions an injured party must: (1) be a member of the public, i. e., within the class the legislature intended to protect by the act; (2) suffer "actionable injury"; and (3) show that this injury was proximately caused by the negligence of the motor carrier or its employee. *See Tarrant v. Davis*, 1940, 62 Ga.App. 880, 10 S.E.2d 636. The term "actionable injury" means an injury to a person who could sue and obtain a judgment against the common carrier, and necessarily excludes employees of the carrier who could not sue the employer. *American Home Assurance Co. v. Spicer*, 5 Cir. 1968, 402 F.2d 988, *affirming* N.D.Ga.1967, 292 F.Supp. 27, 31, *cert. denied*, 1969, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479; *Combs v. Carolina Casualty Insurance Co.*, 1954, 90 Ga.App. 90, 92, 82 S.E.2d 32. Because this suit would be barred under the Georgia Workmen's Compensation Law, Mrs. White fails on the second prerequisite.

Even were we able to conclude that *Ward v. Kraftco, supra,* is not persuasive precedent here, we would still agree with the court below that § 68–612 is unavailable here because Wright was not a member of the "public" for whom the statute was enacted. The Georgia Court of Appeals has construed the term as excluding the em-

3. Ga.Code Ann. § 68–612 provides in relevant part:

No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, . . . for the protection of the public against injuries proximately caused by the negligence of such motor carriers, its servants or agents. . . . [S]uch bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. The commission may, in its discretion,

allow the holder of such certificate to file, in lieu of such bond, a policy of indemnity insurance in some indemnity insurance company authorized to do business in the State of Georgia, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the commission. . . . If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action whether arising in tort or contract.

ployees of the motor carrier when injured by the negligence of a fellow servant. *Combs v. Carolina Casualty Insurance Co., supra,* 90 Ga.App. at 91, 82 S.E.2d at 34. The language of that case compels us to conclude that § 68–612 was designed to protect strangers to the motor carrier, not those who, although receiving paychecks from a lessor, are involved in the operations of the carrier as if they were employees. The lack of any contractual relationship between Wright and Superior was irrelevant; his activities within the scope of his employment were determined by the contractual relationship between Superior and Crawford. It was implicit in his acceptance of employment with Crawford that he agreed to drive trucks in behalf of anyone with whom Crawford contracted. His contact with Superior was therefore not one of chance against which he needed assurance of the company's solvency. Wright was driving for Superior as a part of his employment; his remedy was one of employee against employer.[4]

### V.

■ Mrs. White lastly contends that, even if she cannot recover under Georgia law, Superior is liable for her son's death as a matter of substantive federal law implicit in 49 U.S.C. § 304(e). In effect, Mrs. White argues that the federal statute makes common carriers absolutely liable for all harm caused by the operation of their leased vehicles.

The trial court correctly concluded that, insofar as Mrs. White seeks recovery solely under § 304(e), she is barred from recovering from Excalibur due to her failure to secure a judgment against the insured motor carrier. While such a judgment is unnecessary to recover under Ga.Code Ann. § 68–612, *see, e. g., Tarrant v. Davis, supra,* 62 Ga.App. at 884, 10 S.E.2d at 637, by the terms of 49 U.S.C. § 315[5] in order for Excalibur to be liable under the policy filed by Superior with the ICC, Superior must first be adjudicated liable as a party. *See Wellman v. Liberty Mutual Insurance Co.,* 8 Cir. 1974, 496 F.2d 131, 139. Because we have held that Wright suffered no "actionable injury," nor was he a member of the "public" within the meaning of § 68–612, Mrs. White could recover only under § 304(e). Her decision to sue only John Carroll Lindsey in state court precludes any relief in this action.

Even had Wright's mother obtained a judgment against Superior in her prior suit, however, we would still be constrained to hold that Wright was no more an intended beneficiary of § 304(e) than he was a member of the public for purposes of Ga.Code Ann. § 68–612, and thus that federal law does not create a tort remedy for his survivors.

In reaching this result we must respectfully differ with our brethren in the Fourth Circuit who decided in *Proctor v. Colonial Refrigerated Transportation, Inc.,* 4 Cir. 1974, 494 F.2d 89, that the employee of a lessor, injured by a fellow servant who was then driving the leased truck, is a member of the public with respect to the carrier under § 304. Despite the lack of contractual agreement between the carrier and the lessor's employees, they cannot be con-

---

4. Because Wright was not one of the "public" for whom § 68–612 was enacted, he also fell outside the coverage of the insurance policy issued by Excalibur in compliance with the requirements of that statute. *See, e. g., Great American Indemnity Co. v. Vickers,* 1936, 183 Ga. 233, 188 S.E. 24.

5. The relevant portion of 49 U.S.C. § 315 provides:

No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amount as the Commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others.

sidered strangers to the lessee, comparable, as the court in *Proctor* asserts, to members "of the traveling public," when engaged in operating a leased vehicle in the lessee's business. *See id.* at 92. They stand apart not merely from other travelers but from all of the rest of the public who are not directly engaged in furthering the economic interest of the carrier and who are as a result made its responsibility under § 304. For the same reasons that we have concluded that Wright was not a member of the "public" for purposes of Ga.Code Ann. § 68–612, we must also hold that he was not a member of the public for purposes of the applicability of federal substantive law created by § 304 and must seek his remedy elsewhere.[6]

For all of these reasons, the judgment appealed from is AFFIRMED.

---

**6.** The court in *Proctor* never considered the possibility that state workmen's compensation law might act as a bar to suit against the carrier by the lessor's employees, possibly because the court never explicitly considered whether Proctor was a "statutory employee" of the lessee-carrier under § 304(e).