**Nora JOHNSON, Administratrix of the Estate of Melvin Mattingly, Deceased, Plaintiff–Appellant,**

v.

**S.O.S. TRANSPORT, INC., Defendant–Appellee,**

**Central Transport, Inc., Defendant.**

No. 89–6032.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1990.

Decided Feb. 20, 1991.

**517**

Norman E. McNally (argued), Louisville, Ky., for plaintiff-appellant.

Gerald J. Rapien (argued), Taft, Stettinius & Hollister, Cincinnati, Ohio, Robert Winter, Taft, Stettinius & Hollister, Ft. Wright, Ky., for defendant-appellee.

Before KRUPANSKY and NORRIS, Circuit Judges, and MILES, Senior District Judge.*

MILES, Senior District Judge.

This is a wrongful death case in which the plaintiff appeals from an order granting summary judgment to the lessee of a semi-truck. The plaintiff alleges that her son, a truck driver, was killed while transporting a load of steel for defendant S.O.S. Transport, Inc. ("S.O.S."), the lessee of the vehicle in question. She asserts that the S.O.S., a common carrier regulated by the Interstate Commerce Commission, was negligent in its maintenance and inspection of the vehicle, causing it to leave the roadway and resulting in the death of her son.

The district court held that S.O.S. owed no duty to the plaintiff's decedent, under the common law of Kentucky, to maintain

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

the vehicle in which he was killed. The district court also held that federal law does not provide a separate federal tort remedy for drivers of common carriers who are injured due to the failure of such carriers to comply with applicable federal safety regulations. Because we believe that the federal regulatory design extends protection to drivers of common carriers, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

## I

S.O.S., a corporation having its principal place of business in Ohio, holds a certificate which permits the company to operate as a motor carrier under the regulatory authority of the Interstate Commerce Commission. The company owns none of its own trucks and employs no drivers. Instead, it leases equipment from others, under arrangements in which the lessors of the equipment also supply the drivers.

On July 8, 1985, S.O.S. entered into a "trip" lease with Robert Donato, a self-employed owner and lessor of trucks and trailers used in the steel hauling business. Under this lease, Donato agreed to provide S.O.S. with a tractor, trailer,[1] and a driver for transportation of a load of steel from Middletown, Ohio to High Point, North Carolina. Pursuant to the lease, Donato furnished S.O.S. with the truck and the services of a driver, Melvin Mattingly. Mattingly had regularly driven the truck on trips for Donato since April, 1985.

Mattingly departed from Donato's place of business at Crittenden, Kentucky and first drove the truck to Monroe, Ohio, to the place of business of Glendeen Justice Candee. S.O.S. admits that Candee, a freight broker, served as authorized agent for S.O.S. in executing the lease and in allegedly performing an inspection of the vehicle as required by federal regulations. After completion of the inspection and paperwork, an employee of Candee's gave Mattingly placards bearing S.O.S.'s Interstate Commerce Commission identification numbers, for attachment to the tractor. Mattingly then departed for Middletown, Ohio, to pick up the load from the shipper.

Mattingly left Middletown on July 8, 1985, hauling a 46,000–pound load of steel. On July 10, 1985, Mattingly was killed while en route to High Point, North Carolina, when the truck left the road as it descended a mountain grade.[2]

The plaintiff Nora Johnson, Mattingly's mother and the administratrix of his estate, filed this diversity wrongful death action, seeking to recover damages from S.O.S.[3] Although Johnson did not state in her complaint what defect or defects in the tractor-trailer form the basis for her allegation that S.O.S. was negligent in maintaining the vehicle, she has stated, in response to discovery requests, that the vehicle's brakes and bulkhead were deficient.

S.O.S. filed a motion for summary judgment on July 31, 1987, and again on May 31, 1988, after Johnson filed her amended complaint. On September 14, 1988, the district court issued an order granting partial summary judgment, "to the extent that ... the opinion of *White v. Excalibur Ins. Co.*, 599 F.2d 50 (5th Cir.1979) is applicable to the facts of this case."[4] In this same

---

1. Throughout this opinion, the phrase "the truck" shall refer to both the tractor and the trailer.

2. Mattingly did not drive directly to High Point. While en route, he experienced mechanical difficulties with the vehicle and phoned Donato from Corbin, Kentucky for instructions. Donato instructed Mattingly to have the tractor towed by wrecker to Dry Ridge, Kentucky, where Donato repaired the vehicle before Mattingly again departed for High Point.

3. Johnson's initial complaint also sought damages from Donato and from Central Transport, Inc., a carrier to which the truck was under a

long-term lease. In her amended complaint, Johnson asserted no claims against Donato. Central, which had no financial interest in the load being transported by Mattingly under a trip lease for S.O.S., was dismissed from this appeal pursuant to a stipulation.

4. In *White*, the Fifth Circuit held that the survivor of a driver killed while riding as a passenger in a vehicle leased to an ICC-certified carrier could not recover from the carrier's insurer. 599 F.2d at 55.

order, the district court also ordered the parties to brief the question of whether the *"White"* rule should apply to a carrier who did not provide workers' compensation insurance for drivers.[5] The court referred this latter issue to the magistrate for resolution. On March 14, 1989, the magistrate issued a report and recommendation in which he concluded that notwithstanding the lack of workers' compensation insurance, summary judgment should be granted to the defendants "to the extent the plaintiff claimed relief solely for violation of federal safety statutes and regulations and to the extent the state common law negligence claim is based on the alleged federal violations." The magistrate also concluded that Johnson continued to have a cause of action in negligence against S.O.S. under state law. S.O.S. filed an objection to this latter conclusion reached by the magistrate. On June 30, 1989, the district court issued an order granting summary judgment to the defendants, adopting the magistrate's conclusion that Johnson could not avail herself of the federal statutes and regulations, and rejecting the magistrate's conclusion that Johnson could continue to maintain her action under Kentucky common law.

## II

■ Initially, we conclude that the district court was correct in its determination that Kentucky law affords Johnson no basis for her common law negligence claim against S.O.S.[6]

■ Johnson's common law theories of recovery fall into three basic categories. First, Johnson claims that S.O.S. may be held liable under a bailment theory for negligently "furnishing" the allegedly defective truck to Mattingly. Under Kentucky law, a bailor who does not retain control of the article bailed is not responsible to a third person for its negligent use by the bailee. *American Fidelity & Casualty Co. v. Pennsylvania Casualty Co.,* 258 S.W.2d 5 (Ky.1953). According to Johnson, the trip lease between Donato and S.O.S. was a bailment, under which Donato, as bailor, retained no control over the truck, rendering S.O.S., as bailee, liable to third persons injured through its negligent use.

■ We find this bailment theory of liability to be inapplicable under the facts of this case. It is undisputed that Donato in fact retained substantial, if not complete, control over the truck. The trip lease provided that Donato retained responsibility to "[c]ontrol the manner, means, or methods for the accomplishment" of the lease, as well as responsibility to load the truck. Indeed, the lease specifically provided that S.O.S. would have no right "to control the manner, means, or methods utilized by the Lessor for the accomplishment of the results of this Agreement." The lease also provided that Donato retained responsibility to provide maintenance for the truck. When he developed a problem with the truck, Mattingly contacted Donato, not S.O.S., for instructions. While a federal statutory presumption of control over the vehicle may have applied to S.O.S. during the performance of the trip lease (as discussed in a subsequent part of this opinion), in the absence of actual control on the part of S.O.S., we cannot conclude that this presumption renders S.O.S. a bailee under traditional common law principles of control.[7] Johnson's second common law theo-

---

5. The court in *White* also held that the survivor's suit was barred by Georgia's workers' compensation law. 599 F.2d at 54.

6. Kentucky's common law on negligence should be applied in this diversity action. Johnson is a Kentucky resident, as was Mattingly. Furthermore, Mattingly's trip began and was to end in Kentucky. Kentucky's conflict of law rules favor the application of its own law whenever it can be justified. *Grant v. Bill Walker Pontiac-GMC, Inc.,* 523 F.2d 1301, 1304 (6th Cir.1975).

7. Johnson also argues that S.O.S. may be held liable under a "subbailment" theory for "furnishing" or supplying the allegedly defective vehicle to Mattingly. According to Johnson, S.O.S. became a bailor and Mattingly a bailee of the vehicle. The bailor of an article impliedly warrants that the article is fit for the purposes for which he knows it is to be used. *Alberti's Administratix v. Nash,* 282 S.W.2d 853 (Ky. 1955).

S.O.S. did not, in any sense of the word, "furnish" or entrust the vehicle to Mattingly. Mat-

ry of recovery in negligence is similarly based upon an assumption that S.O.S. "furnished" the truck to Mattingly. According to Johnson, if it is determined that Mattingly was an employee of S.O.S., S.O.S. may be held liable for failing to furnish Mattingly with a safe place to work and safe tools and appliances. Johnson cites *Louisville and Jefferson County Bd. of Health v. Mulkins*, 445 S.W.2d 849 (Ky.1969) in support of this argument.

In making this argument, Johnson appears to be arguing in the alternative; she repeatedly insisted at the district court level that Mattingly was not S.O.S.'s employee. Indeed, the undisputed facts demonstrate that if Mattingly was an employee of anyone, he was most likely an employee of Donato. *See Garland v. Wayne Maxwell Trucking Co.*, No. 89–CA–002115 (Ky.Ct. App. April 27, 1990). Therefore, we find this theory, like Johnson's bailment theory, to be inapplicable under the facts of this case.

■ Johnson's third common law theory of recovery in negligence is based upon a "universal" duty of care. As the Kentucky Supreme Court has previously stated, "[E]very person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky.1987) (citing *M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky.1974)). Johnson argues that the universal duty of care "encompasses the obligation to furnish [drivers] with proper equipment."[8] (Tr. at 22)

Although the Kentucky Supreme Court has not expressly abandoned the universal duty concept of negligence, S.O.S. argues that the concept has been effectively abandoned "for more traditional notions of duty based on recognized legal relationships." *See Ralston Purina Co. v. Farley*, 759 S.W.2d 588, 592 (Ky.1988) (Leibson, J., dissenting: "[A]s we have done in several recent cases, here once again we abandon the negligence concept for artificial rulemaking[.]") Whether the concept survives to support the existence of a duty of care flowing from S.O.S. to Mattingly has not been directly addressed by the district court. However, because this is a question of law, we address it.[9] (Tr. at 22)

We agree that the continued viability of the universal duty concept under Kentucky law is questionable. Nonetheless, assuming that a Kentucky court would still apply such a duty under some circumstances, we cannot conclude that a Kentucky court would find the existence of a duty of care flowing from S.O.S. to Mattingly arising independent of federal statutes or regulations. We think that the court's opinion in *Ralston Purina*, 759 S.W.2d at 591, suggests that it would decline to apply the universal duty concept of negligence where a traditional rule of nonliability based upon a recognized legal relationship is applicable.[10]

Donato, not S.O.S., assumed all control over the manner, means, and methods for the accomplishment of the purposes of the lease. S.O.S. merely contracted with Donato to lease the truck for a limited time and purpose, with Donato providing Mattingly's services to S.O.S. pursuant to this agreement. Kentucky recognizes the general rule that one who engages an independent contractor is generally not legally responsible for the negligence of such a contractor. *E.g.*, *Clark v. Young*, 692 S.W.2d 285, 289 (Ky.Ct.App.1985); *King v. Shelby Rural Electric Cooperative Corp.*, 502

---

tingly, who worked for Donato, used the vehicle furnished by Donato to fulfill the terms of the agreement between Donato and S.O.S. We therefore find this "subbailment" argument to be without merit.

8. Thus, once again, the existence of this common law duty necessarily hinges upon an erroneous factual assumption that S.O.S., rather than Donato, supplied or furnished Mattingly with the allegedly defective truck.

9. Questions of law are always subject to a review as a matter of law upon appeal. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987).

10. In *Ralston Purina*, the Kentucky Supreme Court held that any duty on the part of Ralston Purina to warn a subcontractor's employee of a dangerous condition in its premises was discharged through a warning issued to the independent contractor. 759 S.W.2d at 590.

S.W.2d 659 (Ky.1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974). In accordance with this rule, we believe that a Kentucky court would decline to hold S.O.S. liable for Donato's actions in supplying the allegedly defective truck to Mattingly.

### III

■ Johnson's remaining theory of liability against S.O.S. is based upon the alleged failure of S.O.S. to comply with federal regulations pertaining to certified carriers.[11]

Certified interstate motor carriers, such as S.O.S., are required to comply with the provisions of Title 49 and the regulations promulgated thereunder. 49 U.S.C. § 11107 requires motor carriers which use leased vehicles to

> have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

49 U.S.C. § 11107(a)(4) (1982).[12] Under 49 C.F.R. § 1057.12(c)(1) (1989), the lease agreements covering such vehicles

shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment during the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

The trip lease between Donato and S.O.S. provides that the lessee, S.O.S., "shall have exclusive possession, use, and control" of the truck, and that S.O.S. "assumes full responsibility to the public, shippers and all applicable regulatory agencies," for the operation of the truck.

Undoubtedly, 49 U.S.C. § 11107(a)(4) and 49 C.F.R. § 1057.12(c)(1) render lessee carriers vicariously liable, notwithstanding traditional principles of agency, for injuries sustained by third parties resulting from the negligence of the drivers of leased vehicles. *E.g., Price v. Westmoreland,* 727 F.2d 494, 495 (5th Cir.1984), *rhg. denied,* 732 F.2d 941 (5th Cir.1984); *Rodriguez v. Ager,* 705 F.2d 1229, 1237 (10th Cir.1983); *Wellman v. Liberty Mutual Ins. Co.,* 496 F.2d 131, 136 (8th Cir.1974); *Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473, 478 (3d Cir. 1961).[13] However, courts which have ex-

---

**11.** Initially, we note that the amended complaint is somewhat ambivalently worded. More specifically, it is unclear whether Johnson intended to state a federal cause of action, or whether she intended a reference to federal standards to provide the basis for a negligence per se claim under Kentucky law. The district court appears to have proceeded on the assumption that Johnson intended to state both a state law cause of action in negligence, as well as a federal cause of action for violation of Title 49. Because Johnson's briefs filed with this Court are similarly unclear in this regard, we proceed on this same assumption.

For purposes of this appeal, our analysis is substantially the same regardless of whether Johnson intended the reference to Title 49 as the basis of a negligence per se claim or as the basis of a federal law cause of action. Ky.Rev. Stat. § 446.070 (Baldwin 1989) provides that "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation although a penalty or forfeiture is imposed for such violation." This statute has been held to create a private right of action for the violation of any statute so long as the plaintiff belongs to the

class intended to be protected by the statute. *State Farm Mutual Automobile Ins. Co. v. Reeder,* 763 S.W.2d 116, 118 (Ky.1988). Furthermore, such a violation is treated as negligence per se. *Grayson,* 736 S.W.2d at 333. Similarly, 49 U.S.C. § 11705 (Supp.1986) provides for a private right of action for persons who sustain damages "as a result of an act or omission of [a] carrier in violation of this subtitle." 49 U.S.C. § 11705(b)(2); 49 U.S.C. § 11705(c)(1). Thus, the controlling question in either event is whether Mattingly, as the driver of a vehicle leased by a certified carrier, is within the protection of the federal regulatory scheme.

**12.** Among the safety regulations with which carriers must comply are 49 C.F.R. § 393.40 (1989) (brake system requirements); § 393.48 (1989) (brakes to be operative); § 393.52 (brake performance levels); § 393.106 (1989) (bulkhead or "headerboard" strength requirements).

**13.** *Cf. Wilcox v. Transamerican Freight Lines, Inc.,* 371 F.2d 403, 405 (6th Cir.1967), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967) (carrier-lessee held not liable for negligence of owner-driver who had completed assignment for lessee at time of collision).

plored the question of whether Title 49 and its accompanying regulations provide a basis for holding a certified lessee carrier liable for injury sustained by the driver of the leased vehicle have experienced greater difficulty in resolving the extent of the lessee-carrier's liability under the federal regulatory scheme.[14] This case presents this Court's first opportunity to explore the question.

In *Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F.2d 89 (4th Cir. 1974), an assistant driver employed by the lessor of a truck was injured while riding as a passenger in the leased vehicle. The assistant driver, Proctor, sued the lessee carrier, Colonial, claiming negligence on the part of the primary driver (who also happened to be the lessor) as an agent of Colonial. Colonial argued that its responsibility under federal law[15] was limited to the "shipping or traveling public," and did not extend to an employee of the lessor. The Fourth Circuit was not convinced by this argument:

> The statute and regulatory pattern clearly eliminates the independent contractor concept from such lease arrangements and casts upon Colonial [the lessee] full responsibility for the negligence of Bales as driver of the leased equipment. Any language to the contrary in the lease agreement would be violative of the spirit and letter of the federal regulations and therefore unenforceable.

> \* \* \* \* \* \*

... Proctor was as much a stranger to Colonial as a shipper or a member of the traveling public, and to deny him recovery upon the independent contractor theory would undercut the primary purpose of the regulatory design.

*Id.* at 92.

Five years later, in *White v. Excalibur Ins. Co.*, 599 F.2d 50 (5th Cir.1979), *cert. denied*, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979), the Fifth Circuit, in what can only be described as dicta, expressed the opinion that the co-driver of a leased vehicle, who was killed in an accident which occurred while he was asleep in the cab, was not an "intended beneficiary" of the former § 304(e) (now § 11107(a)(4)) and that therefore federal law did not create a tort remedy for the survivors of the deceased driver:

> In reaching this result we must respectfully differ with our brethren in the Fourth Circuit who decided in *Proctor v. Colonial Refrigerated Transportation, Inc.*, 4 Cir.1974, 494 F.2d 89, that the employee of a lessor, injured by a fellow servant who was then driving the leased truck, is a member of the public with respect to the carrier under § 304. Despite the lack of contractual agreement between the carrier and the lessor's employees, they cannot be considered strangers to the lessee, comparable, as the court in *Proctor* asserts, to members 'of the traveling public,' when engaged in operating a leased vehicle in the lessee's business. *See id.* at 92. They stand

**14.** *E.g., Marquez v. Bursch Trucking Co.*, 198 Cal.App.3d 156, 243 Cal.Rptr. 649 (1988); *Heaton v. Home Transp. Co., Inc.*, 659 F.Supp. 27 (N.D.Ga.1986); *Riddle v. Trans–Cold Express, Inc.*, 530 F.Supp. 186 (S.D.Ill.1982); *Toomer v. United Resin Adhesives, Inc.*, 652 F.Supp. 219 (N.D.Ill.1986).

**15.** In *Proctor*, the Fourth Circuit applied 49 U.S.C. § 304(e)(2), which has been repealed and recodified as the present *49 U.S.C.* § 11107(a)(4), and 49 C.F.R. § 1057(a)(4), which has also since been reorganized and revised. The former § 304(e)(2), which was in force at the time *Proctor* was decided, provided as follows:

> (e) ... [T]he Commission is authorized to prescribe, with respect to the use by motor

carriers (under leases, contracts, or other arrangements) of motor vehicles not owned by them, in the furnishing of transportation of property—

> .    .    .    .    .

> (2) such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment and inspection thereof....

In substance, therefore, § 11107(a)(4) does not differ from § 304(e)(2).

apart not merely from other travelers but from all of the rest of the public who are not directly engaged in furthering the economic interest of the carrier and who are as a result made its responsibility under § 304.

*Id.* at 55.[16]

In reaching our result in this case, we find the reasoning of the Fourth Circuit in *Proctor* to be more persuasive. The Fifth Circuit's opinion in *White* assumes—incorrectly, we believe—that the driver of a leased vehicle is not an intended beneficiary of the federal regulatory scheme with which the lessee-carrier is required to comply in using nonowned equipment.

Initially, it is apparent from the language of 49 U.S.C. § 11107(a)(4) itself that Congress intended that carriers who use leased equipment would be subjected to the same requirements, safety or otherwise, to which they would be subjected in using equipment owned by them. The statute mandates that the lessee carrier assume control over the vehicle, and bear responsibility, as it would if it were the owner, for any defects in the vehicle or negligence in its operation.[17] Although the statute does not explicitly state *to whom* the lessee carrier must "be responsible," it also does not exclude operators from its protective coverage.

In *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), the Court held that the "control and responsibility" requirement does not prohibit an agreement by the lessor to indemnify the lessee for loss caused by the former's

negligence, the Court cited, with approval, an observation of the Interstate Commerce Commission:

> It now seems to be accepted that when an authorized carrier furnishes service in vehicles owned and operated by others, he must control the service to the same extent as if he owned the vehicles, but need control the vehicles only to the extent necessary to be responsible to the shipper, the public, and this Commission for the transportation.

423 U.S. at 39, 96 S.Ct. at 235.

Seizing upon this language—"to the shipper, the public, and this Commission"—S. O.S. argues that a driver such as Mattingly, who is injured while operating an allegedly defective vehicle under lease to a certified carrier, may not rely upon the duties created by the federal regulatory scheme because he is not a "member of the public" to whom protection is afforded. We disagree. *Brada Miller* addressed the limited question of whether the "control and responsibility" requirement prohibits an indemnification agreement which shifts ultimate financial responsibility to the lessor. We decline to extend its holding in a manner which, we believe, does violence to Congressional intent.

In Chapter 34 of Title 49, Congress has explicitly addressed the problem of motor carrier safety, including, more specifically, the safety of operators of vehicles. 49 U.S.C.App. § 2501 *et seq.* (Supp.1986). A stated purpose of Chapter 34 is "to minimize dangers to the health of operators of commercial motor vehicles[.]" 49 U.S.C. App. § 2501 (Supp.1986).[18] The chapter,

---

**16.** The plaintiff in *White* sought recovery from the lessee-carrier's insurer. However, the plaintiff's recovery from the insurer was precluded by her failure to sue the lessee-carrier. 599 F.2d at 55.

**17.** We note that the "control and responsibility" regulations were initially prompted by concerns that certified carriers were evading federal safety requirements by using equipment leased from owner-operators who were exempt from the limitations placed upon certified carriers. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems*, 423 U.S. 28, 37, 96 S.Ct. 229, 234, 46 L.Ed.2d 169 (1975); *American Trucking Ass'ns, Inc. v. United States*, 344 U.S. 298, 302–

05, 73 S.Ct. 307, 310–12, 97 L.Ed. 337 (1953); *Indiana Refrigerator Lines, Inc. v. Dalton*, 516 F.2d 795, 796 (6th Cir.1975), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975).

**18.** A "commercial motor vehicle" is defined as any self-propelled or towed vehicle used on highways in interstate commerce to transport passengers or property—
(A) if such vehicle has a gross vehicle weight rating of 10,001 or more pounds ... 49 U.S.C.App. § 2503(1). S.O.S. admits that the trip lease in question called for Mattingly to haul a load of approximately 50,000 pounds, and it appears undisputed that the load which

which directs the Secretary of Transportation to establish and revise safety regulations pertaining to commercial trucks and buses (49 U.S.C.App. § 2505),[19] is based upon a Congressional finding that "enhanced protection of the health of commercial motor vehicle operators is in the public interest[.]" 49 U.S.C.App. § 2502 (Supp. 1986). It also requires:

> Each employer and employee [to] comply with regulations pertaining to commercial motor vehicle safety issued by the Secretary [of Transportation] under this chapter which are applicable to his or her own actions and conduct.

49 U.S.C.App. § 2504 (Supp.1986).[20] Thus, driver safety is expressly recognized as an important purpose of the regulatory design. We decline to thwart the fulfillment of that purpose by holding, as S.O.S. asks, that lessee carriers are not responsible when their failure to meet safety requirements results in the injury or death of a driver.

Undoubtedly, the safety regulations at issue also impose obligations not only upon carriers but upon drivers themselves. *See e.g.*, 49 C.F.R. § 392.9 (1989) (driver to assure safe loading of vehicle); § 396.13 (1989) (driver to inspect vehicle). Indeed, Mattingly's own violation of the federal regulations and/or negligence, if proven, may very well restrict Johnson's recovery even if she is ultimately victorious in her uphill battle to establish violations of any

applicable regulations on the part of S.O.S.[21] However, to deny Johnson the opportunity to seek recovery against the lessee would, to borrow the words of the court in *Proctor*, "undercut the primary purpose of the regulatory design." 494 F.2d at 92. Accordingly, because drivers are intended beneficiaries of this regulatory design, we conclude that the district court erred in granting summary judgment in favor of S.O.S.

## IV

We therefore REVERSE the judgment of the district court and remand for further proceedings consistent with this opinion.

---

Mattingly hauled weighed approximately that amount.

**19.** Chapter 34, which became effective on October 30, 1984, was in effect at the time of Mattingly's accident.

49 U.S.C.App. § 2505(a) authorizes the Secretary of Transportation to issue regulations pertaining to commercial motor vehicle safety "[n]ot later than 18 months after October 30, 1984." Mattingly's accident occurred on July 10, 1985. However, 49 U.S.C.App. § 2505(e) further provides that if the Secretary does not issue regulations in accordance with § 2505, then regulations pertaining to commercial motor vehicle safety which the Secretary issued before October 30, 1984, and in effect on October 30, 1984 shall be deemed to be regulations issued by the Secretary under § 2505.

**20.** Importantly, for purposes of Chapter 34, the operator's status, whether it be as an independent contractor or employee of a carrier, is

irrelevant. 49 U.S.C.App. § 2503(2) defines an "employee" as including "an operator of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)...." This same section also defines an "employer" as "any person engaged in a business affecting interstate commerce who owns *or leases* a commercial motor vehicle in connection with that business ..." 49 U.S.C.App. § 2503(3) (emphasis added).

**21.** The district court did not address the sufficiency of the evidence in ruling on S.O.S.'s motion for summary judgment. Because it appears that discovery had not been completed at the time the court granted S.O.S.'s motion for summary judgment, we also decline to address the question of the sufficiency of the evidence to support the essential elements of Johnson's claim.