IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 18, 2014 Session

## APRIL MILLER, ET AL. v. NORTHLAND INSURANCE COMPANY

**Appeal from the Circuit Court for Warren County**
**No. 3842     Larry B. Stanley, Jr., Judge**

---

## No. M2013-00572-COA-R3-CV - Filed April 29, 2014

---

A commercial truck driver was injured while sitting in the passenger seat with another person driving. The question presented is whether the passenger qualified as an employee and was, therefore, excluded from benefits under the trucking company's liability insurance policy. We agree with the trial court's conclusion that the passenger was an employee when the accident occurred.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which BEN H. CANTRELL, SR. J., and RICHARD H. DINKINS, J., joined.

D. Michael Kress, II, Sparta, Tennessee, for the appellant, April and Roger Miller.

B. Thomas Hickey, Jr., Chattanooga, Tennessee and Scott W. McMickle and Jon M. Hughes, Alpharetta, Georgia, for the appellee, Northland Insurance Company.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Refa Watley is the owner of Refa Watley Trucking ("RWT"), a federally authorized motor carrier. On December 4, 2007, in the State of New York, a truck owned by RWT was in an accident. The truck was driven by Lewis Watley; April Miller was in the passenger seat. April Miller sustained catastrophic injuries. She sought benefits under RWT's liability policy, issued by Northland Insurance Company, but was denied coverage with the exception of New York's "no fault" benefits in the amount of $50,000.

April Miller and her husband filed this declaratory judgment action against Northland seeking a determination that she "constituted [a] non-employee, independent contractor at the time of the accident and alleged injuries, such that any injuries that the Plaintiffs have been shown to suffer, together with all medical expenses related thereto, are insured and covered" by Northland's commercial motor carrier liability insurance policy.

The case was initially removed to federal district court and then remanded back to the Circuit Court of Warren County. After completion of discovery, Northland filed a motion for summary judgment, on September 10, 2012, in which it asserted that there was no coverage under its policy pursuant to the policy's employee exclusions because April Miller and Lewis Watley were both employees of RWT. In support of its motion, Northland filed a statement of undisputed material facts and exhibits; Northland subsequently filed additional statements of undisputed material facts and exhibits.

The court held a hearing on January 28, 2013 at which it heard arguments from both sides. On February 1, 2013, the court entered an order granting Northland's motion for summary judgment. The court concluded that April Miller was an "employee"of RWT under the applicable definition at 49 C.F.R. § 390.5, which includes independent contractors.[1] The court therefore held that April Miller was not covered pursuant to this policy exclusion. Ms. Miller then filed this appeal.

ISSUE ON APPEAL

The determinative issue in this appeal is whether the trial court correctly held that April Miller is excluded from coverage under the terms of the Northland policy because she qualified as an "employee" under the applicable definition.[2]

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and

[1]The court also held that April Miller was an independent contractor based upon the various factors used to distinguish an independent contractor and an employee under Tennessee law. For purposes of this appeal, we need not address this holding.

[2]Although Northland also argues that the trial court erred in finding Ms. Miller to be an independent contractor under Tennessee common law, we have determined that we need not address this issue in order to decide this case. The applicable definition of "employee" is the definition used in the Northland policy. The appropriate status for Ms. Miller under Tennessee common law is irrelevant to the outcome of this case and, therefore, we decline to address that question.

2

the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).[3]

When we must interpret the meaning of a statute, our review is de novo without deference to the decision of the trial court. *Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). Questions regarding the interpretation of written contracts involve legal issues. *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001). Insurance policies are contracts subject to the same rules of construction used to interpret other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Merrimack*, 59 S.W.3d at 148.

ANALYSIS

The Northland commercial liability insurance policy issued to RWT includes the following relevant exclusions:

> 4. Employee Indemnification and Employer's Liability
> "Bodily injury" to:
> a. An "employee" of the "insured" arising out of and in the course of:
>> (1) Employment by the "insured"; or
>> (2) Performing the duties related to the conduct of the "insured's" business; or . . .
>
> 5. Fellow Employee

---

[3]Tennessee Code Annotated section 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan,* is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.,* 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011). The Millers filed this declaratory judgment action on November 30, 2010.

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment, or while performing duties related to the conduct of your business.

The policy also includes an MCS-90 Endorsement,[4] which states, in pertinent part:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

Under federal law, motor carriers engaged in interstate commerce must procure at least a minimum level of public liability insurance. *See* 49 U.S.C. § 13906 ; 49 C.F.R. § 387.1 *et seq.* The purpose of this requirement is "to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial motor vehicle." *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002). There is a substantial body of case law applying the federal regulatory laws to the interpretation of these commercial liability policies. *See, e.g., Gramercy Ins. Co. v. Expeditor's Express, Inc.*, No. 3:12-cv-509, 2013 WL 3761310, at *4 (M.D. Tenn. July 16, 2013); *Lancer Ins. Co. v. Newman Specialized Carriers, Inc.*, 903 F.Supp. 2d 1272, 1278 (N. D. Ala. 2012); *United Fin. Cas. Co. v. Abe Hershberger & Sons Trucking Ltd.*, No. 11AP-629, 2012 WL 457715, at *3 (Ohio Ct. App. Feb. 14, 2012).[5]

The MCS Endorsement further states that the insurance provided for public liability "does not apply to injury to or death of the insured's employees while engaged in the course of their employment . . . ." Similarly, the federal regulations do not require motor carriers to obtain coverage for "injury to or death of [their] employees while engaged in the course of their employment. . . ." 49 C.F.R. § 387.15. Thus, under the policy and the federal law, the key question is whether Ms. Miller was an "employee" of RWT at the time of the accident.

The evidence is undisputed that Ms. Miller was asleep in the passenger seat at the time of the accident. She and the driver, Mr. Watley, departed from Tennessee with a load to be delivered to four stops, the first being in western New York. Mr. Watley and Ms. Miller

___

[4]"MCS" stands for "Motor Carrier Policies."

[5]In their brief, the Millers acknowledge that the State of Tennessee has adopted the federal motor carrier safety regulations. *See* Tenn. Comp. R. & Reg. 1340-06-01-.08.

were sharing the driving responsibilities. Ms. Miller argues that, because she was not driving the truck, she was not acting as an employee at the time of the accident. In addition, she argues that she was an independent contractor, not an employee. The applicable definition of "employee" under the federal regulations provides as follows:

> [A]ny individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (*including an independent contractor while in the course of operating a commercial vehicle*), a mechanic, and a freight handler.

49 C.F.R. § 390.5 (emphasis added). We must determine whether Ms. Miller fits this definition—in particular, whether, even if she were an independent contractor under Tennessee law, she qualifies as an "employee" here because she was "in the course of operating a commercial vehicle."

A number of cases have addressed the application of this definition to a passenger in the truck and determined that a passenger who is a co-driver qualifies as an "employee." In *White v. Excalibur Ins. Co*, 599 F.2d 50 (5th Cir. 1979), Terry Wright and his father worked for O.D. Crawford as drivers, hauling merchandise for Superior Trucking Company pursuant to a lease agreement. *White*, 599 F.2d at 51-52. At the time of the accident, Wright was asleep in the cab; he died in the collision. *Id.* at 52. Wright's mother, Doreen White, brought suit against Superior's insurer, but the district court held that Wright was, "by virtue of federal law, a statutory employee of Superior." *Id.* The court of appeals agreed with this result and reasoned as follows:

> Motor carriers had attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making them all nominally "independent contractors." *See generally Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 1975, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169; *American Trucking Associations, Inc. v. United States*, 1953, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337; *Alford v. Major*, 7 Cir. 1972, 470 F.2d 132. In order to be sure that the public was protected from the torts of these frequently insolvent operators, Congress in 1956 adopted amendments to the Interstate Motor Common Carrier Act requiring a motor carrier to assume "full direction and control" of leased vehicles. 49 U.S.C. § 304(e); 49 C.F.R. § 1057.4(a)(4). *See H.R.Rep.No. 2425, 84th Cong., 2d Sess. (1956), Reprinted in (1956) U.S. Code Cong. & Admin. News, pp. 4304, 4307. Because the carrier now has both a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees

5

of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles. *Simmons v. King*, 5 Cir. 1973, 478 F.2d 857, 867.

While Mrs. White appears to concede that Lindsey as driver of the leased vehicle was a statutory employee of Superior, she argues that Wright was not actively engaged in Superior's business at the time of the accident and therefore was a stranger to the carrier. *The distinction sought to be drawn between a driver on duty and operating the vehicle and a driver on duty and sitting on the right hand seat or asleep in the rest compartment is specious.* Wright was not in a position comparable to being "at home asleep in his own bed." *He was part of the two-man team actually engaged in operating the vehicle on Superior's business. The team is indispensable to continual vehicle operation for federal law generally permits each driver to work only ten hours at a time and then to obtain at least eight hours of rest. 49 C.F.R. § 395.3(a) (1977). The activities of each of the pair during a single driving stint, including his rest period, are clearly within the course of his employment.* We see no reason to distinguish Wright from Lindsey for purposes of his relationship to Superior merely because it was Lindsey's turn at the wheel. Had Wright not been asleep while resting and had he committed some tort, such as negligently tossing an object from the truck window injuring a pedestrian, Superior would have been liable for his acts. We therefore conclude that both drivers were statutory employees of Superior within the meaning of 49 U.S.C. § 304(e).

*Id.* at 52-53 (citations omitted) (emphasis added). Other cases involving co-drivers who were sitting in the passenger seat or resting at the time of the accident have reached the same result. *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 476 (5th Cir. 2009); *Consumers Cnty.*, 307 F.3d at 366-67; *United Fin.*, 2012 WL 457715, at *5 ("Nothing in section 390.5 limits an independent contractor's status as a statutory employee to times when the individual is actually operating the commercial motor vehicle."); *Basha v. Ghalib*, No. 07AP-963, 2008 WL 3199464, at *5 (Ohio Ct. App. 2008).

Based upon these authorities and the reasoning upon which they rely, we must conclude that Ms. Miller was an "employee," and therefore excluded from coverage by the policy provisions quoted above.[6]

---

[6]Northland also asserts that Mr. Miller should be deemed an employee of RWT based upon her own admissions to the company when she applied for no fault benefits pursuant to New York law. In light of our decision here, we need not consider this argument.

Ms. Miller also asserts that the trial court erred in considering the definition of "employee" contained in the insurance contract. The contract itself, however, does not include a comprehensive definition. Rather, the contract specifies only that "[e]mployee" includes a "leased worker," but "does not include a "temporary worker." These provisions do not provide any guidance under the circumstances of this case. Ms. Miller further urges this court to rely solely upon Tennessee law because Tenn. Code Ann. § 56-7-102 provides, in part, that insurance contracts issued by insurance companies doing business within this state shall be "construed solely according to the laws of this state." Our interpretation does not conflict with Tennessee law as the contract itself includes an endorsement assuring compliance with federal law. Moreover, the definitions in Tennessee's Uniform Classified and Commercial Driver License Act, Tenn. Code Ann. §§ 55-50-101–55-50-805, cited by Ms. Miller, govern the licensing of vehicles in this state and have no application to the situation here. We find no merit in Ms. Miller's arguments.

CONCLUSION

For the foregoing reasons, we affirm the trial court's decision. Costs of the appeal shall be assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE