[No. A095705. First Dist., Div. Three. Oct. 31, 2002.]

LAWRENCE D. MILLER, Plaintiff and Respondent, v.
MITCHELL D. ELLIS, Defendant and Appellant.

**COUNSEL**

Law Offices of Sullivan & Rizzo and Ralph A. Rizzo for Plaintiff and Respondent.

Mitchell D. Ellis, in pro. per., for Defendant and Appellant.

**OPINION**

**McGUINESS, P. J.**—Mitchell D. Ellis appeals from a judgment in favor of respondent Lawrence D. Miller on Miller's action for equitable indemnity. The action arises from a previous personal injury lawsuit and ensuing

malpractice action by the personal injury plaintiff against Attorneys Ellis, Miller, and Joseph Pisano for failing to bring the underlying case to trial within five years. Ellis contends the trial court erred as a matter of law in applying the collateral source rule to this action, in which one of two cotortfeasors (Miller) is seeking equitable indemnification from the other (Ellis) for sums paid in settlement of the underlying personal injury action by an insurance company. Because the trial court misapplied the collateral source rule and the remedy of equitable indemnification in a way that would result in unjust enrichment, we reverse and remand for modification of the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

After suffering injury in a slip-and-fall accident in July 1990, Michael Fay retained appellant Ellis to represent him in a personal injury action. On April 9, 1991, Ellis filed suit on behalf of Fay. In 1992, Ellis associated respondent Miller to assist in the litigation of Fay's case.

Miller was the attorney assigned to attend a trial-setting conference on Fay's personal injury lawsuit. Miller set the Fay matter for trial on a date that was past the five-year deadline. As a result the Fay case was dismissed for failure to comply with the five-year statute. (Code Civ. Proc., § 583.310.)

Fay filed an action for legal malpractice against Ellis, Miller, and the fictitious firm of "Pisano and Ellis." Miller carried errors and omissions insurance coverage; neither Ellis nor Pisano had such coverage. Miller's malpractice insurance carrier nevertheless in effect provided Ellis and Pisano with a "courtesy defense." Ultimately, the insurer paid Fay $75,000 in settlement of Fay's lawsuit. In exchange, Fay and his attorney executed a global settlement and release prepared by Miller's malpractice insurer's outside counsel.[1] This settlement agreement released not only Miller, but also Ellis, the fictitious firm of "Pisano & Ellis," and "any and all other agents, employees, persons, firms, associations, or corporations . . . who are or may ever become liable to the undersigned, of and from any and all claims, demands, damages, actions and causes of action of every kind, known or unknown, arising out of or in any way connected with the occurrence out of which it is claimed that the undersigned suffered damage to person and property and which resulted in the undersigned's legal malpractice claim against the parties released herein . . . with respect to their

---

[1]Miller's malpractice insurer would not pay any money to settle the case unless there was a complete settlement including a global release executed by the claimant, releasing all participants. The global release was a form release utilized by Miller's malpractice insurance carrier's outside counsel.

handling of the undersigned's personal injury and worker's compensation actions."

In connection with the settlement of the malpractice action, Miller incurred $13,742.78 in attorney fees and costs. Of this amount Miller paid only his deductible in the amount of $5,000, while the insurance carrier paid the $8,742.78 remainder. Prior to the settlement of the malpractice action, Miller never advised Ellis or Pisano that he intended to pursue an action for equitable indemnity against them.

On March 2, 2000, Miller filed the instant action against Ellis, Pisano, and the alleged firm of "Pisano & Ellis" for "implied equitable indemnity." In their pretrial briefing, Ellis and Pisano both argued that the global settlement and release was in good faith and constituted a complete defense to Miller's claim for equitable indemnity pursuant to Code of Civil Procedure section 877.

At the conclusion of a two-day court trial, the trial court ruled in favor of Miller in his action for equitable indemnification against Ellis. The trial court found that Miller and Ellis were each 50 percent responsible for their legal malpractice in representing Fay, and should share the resulting damages equally. Based on its understanding and application of the collateral source rule, the trial court entered judgment for Miller ordering that he recover $40,000 from Ellis, or 50 percent of Miller's alleged damages of $75,000 plus the $5,000 deductible. The latter sum constituted the only amount Miller actually paid out of pocket. Although raised as a defense by both Ellis and Pisano, the trial court did not directly address the effect of the global settlement and release in its statement of decision. Instead, the trial court simply found that Miller's insurance carrier "did not tender nor provide a courtesy defense" for Ellis or for "Pisano and Ellis," but "did include their names on the final release documents as a matter of policy to finalize that lawsuit." Implicitly, therefore, the trial court found the global release did not preclude Miller's claim for equitable indemnity against Ellis. On the other hand, the trial court did find that it would be neither equitable nor legally correct to impose liability on Pisano for Ellis's malpractice, because Pisano was not involved in representing Fay in any way and was in neither a partnership nor an unincorporated association with Ellis. The trial court therefore entered judgment in Pisano's favor.

Ellis and Miller filed separate appeals from the judgment. We have separately affirmed the trial court's judgment for Pisano in Miller's appeal thereof. In this appeal, we address Ellis's appeal of the trial court's judgment in favor of Miller.

## DISCUSSION

■ The issue on this appeal is whether the trial court erred in its interpretation and application of the collateral source rule to permit respondent Miller to pursue appellant Ellis for equitable indemnification and hold him responsible for 50 percent of the full amount paid by Miller's insurance carrier to Fay on Miller's behalf. For the reasons which follow, and under the particular facts of this case, we conclude that the trial court misinterpreted and misapplied the collateral source rule as well as the doctrine of equitable indemnification. We must therefore reverse the judgment in Miller's favor insofar as it orders Ellis to pay Miller half of the amount the insurance carrier paid in settlement of the malpractice lawsuit.

Normally, an appellate court will review a trial court's apportionment of fault under the substantial evidence standard, giving as great deference to the fact finder's determination of negligence as to its resolution of any other conflict in the evidence. (*Rosh v. Cave Imaging Systems, Inc.* (1994) 26 Cal.App.4th 1225, 1233-1234 [32 Cal.Rptr.2d 136].) In this case, however, appellant Ellis does not dispute the trial court's factual findings. Neither does he contest the trial court's legal conclusion that Miller and Ellis were "equally responsible" for their professional negligence toward Fay. Instead, Ellis challenges only the trial court's express *legal* conclusion that because Miller paid premiums to his insurance carrier in order to obtain the benefit of the insurer's payment to settle Fay's personal injury lawsuit, Miller "suffered damages" including that amount and was entitled to be indemnified for 50 percent thereof by his cotortfeasor, Ellis. ■ When there is no conflicting evidence on an issue, as here, the ultimate conclusion to be drawn from the evidence is a question of law. In the absence of any controverted factual evidence on this appeal, therefore, we are presented with a pure question of law for which the appropriate review is de novo. (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700 [41 Cal.Rptr.2d 352]; *Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 698-699, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602].)

■ The collateral source rule "provides that if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224]; see also *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398] [where "an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted

from the damages which the plaintiff would otherwise collect from the tortfeasor"]; *Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198] ["[w]here a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for damages suffered is not precluded nor is the amount of the damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer"]; *Jones v. California Casualty Indem. Exch.* (1970) 13 Cal.App.3d Supp. 1, 4 [91 Cal.Rptr. 726] ["[s]tated simply, the collateral source rule provides that if a plaintiff receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor"]; Cornblum, Cal. Ins. Law Dict. and Desk Reference (West Group 2001) § 115.1, p. 207; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶¶ 9:37 to 9:38.1, pp. 9-9 to 9-10.)

As repeatedly reaffirmed by the California appellate courts, the collateral source rule represents "a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and other eventualities." (*Helfend v. Southern Cal. Rapid Transit Dist., supra,* 2 Cal.3d at p. 10; see also *Hrnjak v. Graymar, Inc., supra,* 4 Cal.3d at pp. 729-730; *Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 40 [21 Cal.Rptr.2d 110].) The rule is intended to ensure that the right of an *injured party* to be fully compensated for all his or her damages is protected, even if in some instances it entails that party obtaining double recovery from both the insurer and the wrongdoer. (*Hrnjak v. Graymar, Inc., supra,* 4 Cal.3d at p. 729; *Helfend v. Southern Cal. Rapid Transit Dist., supra,* 2 Cal.3d at pp. 9-12; *Shaffer v. Debbas, supra,* 17 Cal.App.4th at pp. 40-41.) ▪ Here, respondent Miller was one of the two *tortfeasors* whose malpractice and professional negligence resulted in damages to Fay, the only injured party in this case. Obviously, the only right to damages for the joint malpractice of Miller and Ellis was Fay's, not that of either one of the two tortfeasors. Miller was in no sense an "injured party" entitled to damages. Aside from his $5,000 insurance deductible, Miller did not advance any of the damages paid to Fay by his insurance carrier to settle the underlying personal injury action. Nevertheless, the trial court found that Miller "suffered damages of $75,000 plus $5,000 toward attorney fees for a total of $80,000," and was entitled to recover 50 percent of that sum from Ellis "by way of indemnity."[2]

▪ The doctrine of equitable indemnification allows liability to be apportioned between wrongdoers based on their relative culpability. It is

[2]Under the collateral source doctrine, Fay's acceptance of the settlement amount paid by Miller's liability insurance carrier would not bar *Fay*, as the injured party, from seeking damages from Ellis as well, since Miller's insurance company was wholly independent of tortfeasor Ellis. In this instance, however, Fay *gave up* that right by executing the settlement

premised upon the principle that as a matter of fairness, joint tortfeasors should share the burden of discharging the legal obligation to the injured party for the damages caused by their mutual negligence. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114-115 [32 Cal.Rptr.2d 263, 876 P.2d 1062]; *Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787 [53 Cal.Rptr.2d 725]; *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 67 [255 Cal.Rptr. 800].) The concern is to avoid the inequity of one co-tortfeasor bearing the entire burden of discharging the liability while the other cotortfeasor is allowed to pay nothing. Thus, the purpose of equitable indemnity is to prevent the unjust enrichment of some cotortfeasors at the expense of others, by requiring all cotortfeasors to bear their fair share on a comparative fault basis. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 591-598, 608 [146 Cal.Rptr. 182, 578 P.2d 899]; *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc., supra,* 208 Cal.App.3d at p. 67.)

Nevertheless, the remedy is not automatically available for all tortfeasors who have injured the same plaintiff. The courts must evaluate the circumstances of each case to determine if its application is appropriate in a given instance. Because indemnification is an equitable remedy designed to correct potential injustice, the courts will not apply it in a way which results in such injustice or unjust enrichment. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital, supra,* 8 Cal.4th at pp. 108-109; *Children's Hospital v. Sedgwick, supra,* 45 Cal.App.4th at pp. 1786-1789; *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc., supra,* 208 Cal.App.3d at pp. 67-70; *Munoz v. Davis* (1983) 141 Cal.App.3d 420, 426-427 [190 Cal.Rptr. 400].) Thus, equitable indemnity is not appropriate where it would have the perverse effect of allowing one tortfeasor to profit at the expense of other cotortfeasors. This would clearly defeat the very purpose of the doctrine, which is to *prevent* unjust enrichment. (*Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc., supra,* 208 Cal.App.3d at pp. 67-68.)

 It is undisputed that Ellis and Miller shared equal liability to Fay for their professional malpractice. In principle, then, Miller would be entitled to equitable indemnification from his cotortfeasor Ellis for any sums *paid by Miller* in excess of Miller's share of the fault in order to discharge their joint

and global release agreement, releasing Ellis as well as Miller from further liability. By virtue of the global release, therefore, Fay would not be able to take advantage of the collateral source doctrine to pursue payment from Ellis individually for the latter's cotortfeasor liability.

liability to Fay.[3] However, in this case Miller himself paid nothing to Fay. Instead, Miller's insurance carrier paid Fay's claim for damages on Miller's behalf, in return for which Fay executed a release discharging Miller's liability completely. As the insured, Miller himself benefited from his insurance carrier's settlement payment to Fay. Miller's only payment out of his own pocket was the $5,000 deductible by which the insurance carrier's reimbursement of Miller's attorney fees was reduced. To permit Miller now to obtain "indemnification" from Ellis for the $75,000 paid to the injured party not by Miller himself, but by his insurance carrier, would effectively reward Miller for his own wrongdoing.

Although Miller's insurance carrier waived *its* subrogation rights, this did not result in Miller obtaining more rights that he otherwise would have had. Subrogation does no more than assign to the insurer the claims of its insured against the legally responsible party. ▆▆▬▆ The waiver by Miller's insurance carrier of its subrogation rights simply left Miller with the same rights he had in the first place, no more and no less. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291-1293 [77 Cal.Rptr.2d 296]; Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶¶ 9:33 to 9:36, pp. 9-8 to 9-9.)[4] ▆ Under the doctrine of equitable indemnity, Miller's only rights against Ellis were for sums which *Miller himself paid* in excess of his fair share under principles of comparative fault. Thus, the issue of subrogation and its waiver by Miller's insurer is essentially immaterial to this case. Miller's rights against Ellis are completely independent of any rights the insurance company itself may have had to recover against Ellis. They are instead dependent on whether it would be equitable to allow Miller to recover amounts which he never was required to pay, and in fact never did pay. To permit Miller now to recover from Ellis half of what the insurer paid to Fay on Miller's behalf would effectively

---

[3]We note that Miller's action for indemnification against his cocounsel Ellis is not barred by any general rule of law or public policy prohibiting concurrent counsel or cocounsel from suing one another for indemnification of legal malpractice damages. As the Supreme Court has recently made clear, such an action for equitable indemnification may be brought so long as such a claim does not either (a) create a conflict between an attorney's duty to his or her client and the attorney's own self-interest; or (b) threaten the confidentiality of attorney-client communications. (*Musser v. Provencher* (2002) 28 Cal.4th 274, 284-285 [121 Cal.Rptr.2d 373, 48 P.3d 408].) The fact that an action for indemnity is not barred in all such cases by a blanket rule of policy does not, of course, mean that it was properly brought here, or that there are equitable grounds for granting the remedy of indemnity in this case.

[4]"The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at pp. 1292-1293.)

permit Miller to profit from his own malpractice, contrary to the equitable principles underlying both the remedy of indemnity and the collateral source rule.

In sum, we conclude the trial court erred as a matter of law in applying the doctrine of equitable indemnification and the collateral source rule to enter judgment in Miller's favor against Ellis for 50 percent of the $75,000 total paid by Miller's insurance company to Fay. Miller was not an injured party in this case; he was a cotortfeasor, equally responsible for the malpractice which caused Fay injury and resulted in the insurance carrier's settlement payment to Fay on Miller's behalf. Permitting Miller to obtain "reimbursement" from Ellis for sums he never paid himself would result in unjust enrichment, contrary to the principles of fairness and equity underlying the doctrine of indemnification. Moreover, because Miller was not in any way an "injured party," the collateral source rule was unavailable to permit him to recover from Ellis despite the payment by his insurance company of his own liability to Fay.[5] Nevertheless, because Ellis was effectively a beneficiary of Miller's malpractice insurance, the insurer's defense of Fay's legal action against them both, and the settlement agreement and global release, Miller is entitled to equitable indemnification from Ellis of 50 percent of the $5,000 deductible Miller paid out-of-pocket for this defense, or $2,500.

## DISPOSITION

The judgment in favor of Miller against Ellis is reversed and remanded for entry of a revised judgment, pursuant to which Ellis shall be ordered to pay Miller the total sum of $2,500. Each party shall bear his own costs on this appeal.

Corrigan, J., and Parrilli, J., concurred.

---

[5]We note that Miller's action for equitable indemnification appears to fail for another substantive reason: namely, the existence of the global settlement and release discharging both Miller *and* Ellis by name from any liability to Fay "arising out of or in any way connected with" the underlying personal injury and subsequent "legal malpractice claim against the parties released herein . . . with respect to their handling of" Fay's personal injury litigation. As seen, although this issue was not addressed directly in the trial court's statement of decision, the trial court implicitly concluded that the global release did not preclude Miller from recovering on his claim for equitable indemnity against Ellis. Because appellant Ellis did not raise this issue in his briefing, and respondent Miller has not had an opportunity to address it, we do not base our decision on the existence of the release. (Gov. Code, § 68081.)