[No. E048536. Fourth Dist., Div. Two. May 18, 2010.]

AMERIGAS PROPANE, L.P., Cross-complainant and Appellant, v.
LANDSTAR RANGER, INC., Cross-defendant and Respondent.

COUNSEL

Law Offices of Fletcher, White & Adair and Paul S. White for Cross-complainant and Appellant.

Snyder Law, Barry Clifford Snyder and Ashley Ann Dorris for Cross-defendant and Respondent.

OPINION

**HOLLENHORST, J.—**

## 1. Introduction

Defendant and cross-complainant AmeriGas Propane, L.P. (AmeriGas), appeals summary judgment entered on AmeriGas's cross-complaint, in favor of cross-defendant Landstar Ranger, Inc. (Landstar).

This action arises from AmeriGas contracting with motor carrier, Landstar, for the transportation of 30 AmeriGas propane tanks. Landstar leased a tractor and flatbed trailer (referred to collectively as a truck) from plaintiff Steven King (King), through his company, King Transportation, LLC. Landstar assigned transportation of the load of tanks to King Transportation, LLC. While offloading the gas tanks, King was seriously injured.

King and his wife brought an action for personal injury and loss of consortium damages against AmeriGas and other defendants. AmeriGas settled with the Kings, and cross-complained against Landstar for reimbursement of a portion of the settlement proceeds. AmeriGas's first amended cross-complaint (FACC) contained causes of action for equitable indemnity, contribution, and declarative relief.

The trial court granted Landstar's motion for summary judgment on the FACC on the grounds AmeriGas admitted King was an employee of Landstar and, since Landstar had workers' compensation covering King, AmeriGas's FACC was barred under the workers' compensation exclusive remedy doctrine. The trial court also concluded AmeriGas did not have standing to bring its cross-action because the Kings had not assigned King's rights to AmeriGas.

AmeriGas contends the trial court erred in granting summary judgment because Landstar's motion for summary judgment did not address or refute AmeriGas's alternative claims that Landstar violated the Federal Motor Carrier Safety Regulations (FMCSR)[1] and breached its duty owed to King as an independent contractor. AmeriGas argues Landstar's motion fails to address the issues of Landstar's duty to King under the FMCSR, as an independent contractor.

We conclude a triable issue existed as to whether King was an employee under state law. We also conclude AmeriGas had a viable claim based on the FMCSR, which Landstar did not negate. Summary judgment was thus improper.

## 2. Factual and Procedural Background

AmeriGas hired Landstar to transport a combination of thirty 250- and 288-gallon propane tanks from its facility in Camino, in Northern California, to its yard in Fontana, California. Landstar assigned the load to King Transportation, LLC pursuant to two agreements entitled, "Independent Contractor Operating Agreement" and "Motor Vehicle and Haulage Agreement Between Independent Contractor and Landstar Ranger, Inc." Landstar required all its drivers to lease a tractor to Landstar. King leased to Landstar a tractor and "drop-deck" trailer, referred to as a flatbed trailer, he had recently obtained for hauling loads for Landstar. King lacked flatbed trailer experience.

After King applied for the job of transporting cargo for Landstar, Landstar gave him a general written test to determine in part whether King needed "tie-down" training for securing cargo on flatbed trailers. According to King, Landstar did not tell him he needed to attend the tie-down training and therefore he did not do so. No one at Landstar instructed him on the proper method for securing the gas tanks.

---

[1] Reference in this opinion to the FMCSR is to 49 Code of Federal Regulations.

On April 13, 2005, King, with the assistance of three AmeriGas employees, loaded the tanks on King's truck. This was the first time King had transported this type of cargo. The top layer of tanks was supported by wood beams known as dunnage.

The following morning, King delivered the tanks to AmeriGas's yard in Fontana. While David Jones, an AmeriGas employee, went to get a forklift to offload the tanks, King unstrapped the tanks. King had chocks, which could be used to prevent the tanks from rolling, but did not use them. He did not believe there was any danger of the tanks rolling off the dunnage. King acknowledged at his deposition that securement of the gas tanks was the truckdriver's responsibility.

While King was standing on the right side of the truck, rolling up one of the straps, Jones began offloading gas tanks from King's truck with the forklift. Marvin Clark, an employee of Andrews Logistics who was delivering bulk propane, assisted Jones in offloading the gas tanks at the rear of King's truck, by chaining the tanks to the forklift forks. The chain slipped and the tank Jones was lifting with the forklift fell back onto the dunnage. When Jones got off the forklift and went to rehook the chain, he noticed King was on the ground, along with a gas tank. Clark called 911.

Landstar's field safety manager, Earl Yarbrough, testified at his deposition that when Landstar drivers do not meet minimum requirements during the application process, they must take a cargo securement class. Yarbrough was critical of King using a 77-inch beam to support the top row of tanks, rather than a 96-inch beam. It was King's responsibility to make sure all the beams were 96 inches.

Yarbrough testified that during the offloading, there should have been chocks in place and King should have removed only the straps securing the row of tanks he was offloading, rather than all the straps. Also, while the forklift was offloading tanks, King should not have stood near the truck since it was likely the forklift would bump the trailer. Yarbrough said he would not expect someone with no experience using a flatbed trailer to know these precautionary procedures. Such a driver would be required to attend a cargo securement course.

King and his wife filed a complaint against AmeriGas, Jones, and Andrews Logistics, alleging claims of (1) negligence, (2) loss of consortium, and (3) premises liability. The Kings alleged that Jones negligently unloaded the tanks with a forklift, causing a tank to dislodge and fall on plaintiff, severely injuring him.

AmeriGas filed a cross-complaint against Landstar for equitable indemnification, contribution and declaratory relief.

*Landstar's First Motion for Summary Judgment*

In July 2007, Landstar filed a motion for summary judgment, arguing Landstar did not owe King any legal duty and was not negligent. Landstar argued it was not involved in the incident and was not responsible for the acts of its independent contractors, such as King, since Landstar did not control King's conduct.

The trial court denied Landstar's summary judgment motion, concluding there were material triable issues of fact, including whether Landstar controlled the manner in which King transported loads; whether Landstar dictated maintenance of the truck; whether King and his company, King Transportation, LLC, were employees or independent contractors of Landstar; and whether AmeriGas, as opposed to King, was responsible for loading and unloading the tanks.

In May 2008, the Kings settled their complaint against AmeriGas and Jones. King dismissed his lawsuit in return for $3,375,000. AmeriGas's cross-complaint remained pending.

AmeriGas filed the FACC adding Andrews Logistics as a cross-defendant. AmeriGas's FACC alleged the same causes of action as the original cross-complaint, including (1) equitable indemnification, (2) contribution, and (3) declaratory relief. AmeriGas incorporated in its FACC the allegations contained in King's complaint.

*Landstar's Second Motion for Summary Judgment*

Landstar moved to continue the trial on AmeriGas's FACC so that Landstar could file a second motion for summary judgment. In opposition to Landstar's continuance motion, AmeriGas argued Landstar's proposed second motion for summary judgment was moot since it was based on the workers' compensation exclusive remedy bar, and AmeriGas had agreed to withdraw its employer negligence theory claim. AmeriGas noted in its opposition that, regardless of whether King was an employee or independent contractor, AmeriGas was asserting two additional liability theories: (1) Landstar breached a statutory duty under the FMCSR and (2) Landstar breached a common law duty owed to its independent contractors.

The trial court granted Landstar's request for a continuance of the trial. Thereafter, AmeriGas settled with Andrews Logistics, leaving Landstar as the sole remaining cross-defendant.

In December 2008, Landstar filed a second motion for summary judgment. Landstar argued in its motion that AmeriGas's FACC was barred by the

workers' compensation exclusive remedy doctrine. Landstar asserted that the only claim alleged in AmeriGas's FACC was employer negligence, which Landstar refuted by providing in its second summary judgment motion, evidence that, at the time of King's accident, Landstar had workers' compensation insurance covering its employees. Landstar also argued in its summary judgment motion that AmeriGas had no standing to assert its cross-complaint claims because AmeriGas's claims were derivative of the Kings' claims, and the Kings did not assign their rights to AmeriGas.

AmeriGas argued in opposition to Landstar's summary judgment motion that Landstar's motion failed to dispose of the entire cross-complaint. It did not address AmeriGas's claim that Landstar breached its statutory duty under the FMCSR, which mandated Landstar ensure that King was qualified to use the flatbed truck. The motion also did not refute the alternative negligence theory that Landstar breached its duty to its independent contractor drivers, such as King, to provide adequate training on securing cargo.

During oral argument, the trial court noted AmeriGas admitted in its FACC that King was an employee of Landstar and it was uncontroverted that Landstar had workers' compensation insurance coverage for its employees at the time of King's accident. Therefore, AmeriGas's FACC was barred under the workers' compensation exclusive remedy doctrine. The trial court further stated that there was no assignment of the Kings' rights to AmeriGas. The court granted summary judgment based on the workers' compensation exclusive remedy doctrine.

### 3. Summary Judgment Standard of Review

"On review of a summary judgment, we 'examine the record de novo and independently determine whether [the] decision is correct. [Citation.]' [Citation.] In undertaking our independent review of the evidence submitted, we apply ' "the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" ' [Citation.]" (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 392 [134 Cal.Rptr.2d 689].)

### 4. Assignment of the Kings' Rights

The trial court granted summary judgment based on two grounds: (1) The Kings did not assign AmeriGas their rights to sue Landstar and therefore

AmeriGas did not have standing to assert its cross-claims, and (2) AmeriGas's cross-claims for equitable indemnity, contribution, and declaratory relief were barred under the workers' compensation exclusive remedy doctrine.

As to the first ground, AmeriGas argues that assignment of the Kings' rights to sue Landstar was not a prerequisite to bringing AmeriGas's cross-complaint against Landstar. We agree.

█ AmeriGas alleges in the FACC that it is entitled to equitable indemnity, contribution, and declaratory relief based on AmeriGas's own right to recover from Landstar and other joint tortfeasors. AmeriGas seeks to recover, based on comparative fault, a portion of what AmeriGas paid to settle the Kings' underlying lawsuit. The FACC pleadings reflect this is not a subrogation action. "Subrogation does no more than assign to the insurer the claims of its insured against the legally responsible party." (*Miller v. Ellis* (2002) 103 Cal.App.4th 373, 381 [126 Cal.Rptr.2d 667].) " 'The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to " 'stand in the shoes' " of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured.' " (*Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 431 [103 Cal.Rptr.2d 305] (*Gulf Ins.*).)

█ Unlike subrogation, in which the claimant stands in the shoes of the injured party, "The basis for the remedy of equitable indemnity is restitution. ' "[O]ne person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." ' [Citation.] [¶] California common law recognizes a right of partial indemnity under which liability among multiple tortfeasors may be apportioned according to the comparative negligence of each." (*Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1786 [53 Cal.Rptr.2d 725].) The test for indemnity is thus whether the indemnitor and indemnitee jointly caused the plaintiff's injury.

The purpose of equitable indemnity is to accomplish substantial justice by equalizing the common burden shared by joint tortfeasors, and to prevent one from profiting at the expense of others. (*Gulf Ins., supra,* 86 Cal.App.4th at p. 431.) Under the doctrine of equitable indemnity, AmeriGas's only rights against Landstar were for sums which AmeriGas *itself paid* in excess of its fair share under principles of comparative fault. (*Miller v. Ellis, supra,* 103 Cal.App.4th at p. 381; *Gulf Ins., supra,* 86 Cal.App.4th at p. 431.)

AmeriGas alleges it is entitled to equitable indemnity from Landstar for a portion of the settlement proceeds, based on Landstar being partially at fault

for King's injuries. AmeriGas claims Landstar failed to provide King with training on how safely to secure and offload the gas tanks, in violation of the FMCSR. This is not a subrogation action. AmeriGas is not prosecuting the Kings' rights to recovery. The Kings have already done so and dismissed their complaint, after settling their claims. The trial court thus erred in granting summary judgment based in part on the ground the Kings had not assigned their rights to AmeriGas.

### 5. Alternative Theories

The trial court also erred in granting summary judgment based on AmeriGas alleging in its FACC that King was an employee of Landstar. The court therefore concluded AmeriGas's FACC was barred by the workers' compensation exclusive remedy doctrine. Under *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199 [78 Cal.Rptr.2d 533] (*24 Hour Fitness*), AmeriGas sufficiently raised a triable issue of fact as to whether King was a Landstar employee under state law, despite AmeriGas's FACC allegation to the contrary.

In *24 Hour Fitness, supra,* 66 Cal.App.4th 1199, the court stated that a plaintiff's admission in a complaint that the defendant acted within the course and scope of employment was not binding on the plaintiff when opposing the defendant's summary judgment motion, if the plaintiff proffered countervailing evidence refuting the employment allegation. (*Id.* at pp. 1211–1212.)

In the instant case, AmeriGas alleged King was an employee of Landstar and that Landstar did not have workers' compensation insurance coverage for King. Therefore, the Kings' negligence claim against Landstar, as King's employer, was not barred by the workers' compensation exclusive remedy bar. But when Landstar established in its summary judgment motion that it had workers' compensation coverage, and argued AmeriGas's FACC was therefore barred by the workers' compensation exclusive remedy doctrine, AmeriGas provided evidence that King was an independent contractor, not a Landstar employee, and had never received workers' compensation benefits.

Because AmeriGas refuted that King was an employee, the trial court erred in granting summary judgment based on the workers' compensation exclusive remedy bar, particularly when recovery based on another alternatively alleged, viable theory of recovery was possible, as discussed below.

a. *Withdrawal of Liability Based on King Being an Employee*

Even though AmeriGas alleged in the FACC that King was an employee of Landstar for purposes of asserting employer negligence, AmeriGas withdrew its employer negligence claim.

In opposition to Landstar's motion to continue the trial on the FACC so that Landstar could file a second motion for summary judgment, AmeriGas argued Landstar's proposed motion was moot because it was based on the workers' compensation exclusive remedy bar, and AmeriGas had previously agreed to withdraw its alternative theory of liability that King was an employee of Landstar. AmeriGas stated in its opposition: "Amerigas has recently determined, as a matter of trial strategy, that it will be too confusing to the jury to present evidence of Landstar's 'affirmative contribution' to King's injuries along with evidence that King was actually an employee and not an independent contractor. . . . [A]fter receiving notice of this *ex parte* hearing, Amerigas apprised Landstar's counsel that it did not intend to argue that King is an employee. Amerigas has determined that it does not need its alternative argument to prove liability."

As discussed below, AmeriGas was correct in concluding that establishing King was an employee was not necessary to prevail on its alternative theory based on the FMCSR. Furthermore, AmeriGas was no longer alleging King was an employee.

AmeriGas argues the trial court erred in granting summary judgment based on the workers' compensation exclusive remedy bar, because employer negligence was not the only theory alleged in the FACC. AmeriGas claims it alleged three alternative theories: (1) employer negligence under state law, which AmeriGas withdrew, (2) violation of the FMCSR, and (3) hirer negligence based on breach of a nondelegable duty owed to an independent contractor.

Although the FACC is inartfully pled, we agree the FACC sufficiently alleges the alternative theory founded on Landstar violating the FMCSR. As to the third theory, based on Landstar breaching a duty of care owed to King as an independent contractor, we conclude this theory is not alleged in the FACC. We base our conclusions on the FACC allegations summarized as follows.

b. *FACC Allegations*

AmeriGas alleged in the FACC the following. In April 2005, AmeriGas hired Landstar to transport propane tanks. Landstar assigned transportation of the load to King. Landstar knew or should have known King had no experience transporting propane tanks or similar cargo. Landstar did not provide King with any safety training or instruction for loading, securing or unloading propane tanks.

At the time of the incident, King was a driver/operator, as defined by the FMCSR, acting on behalf of Landstar. King was acting within the course and scope of his employment/agency with Landstar. King leased the subject Freightliner tractor and step-deck (flatbed) trailer to Landstar. As mandated by FMCSR part 376.12 (2009), the written lease agreement stated that the truck was for Landstar's " 'exclusive possession, control and use, and [Landstar] shall assume complete responsibility for the operation of the [truck]. . . .' "

On April 13, 2005, King loaded the tanks onto his truck, leased to Landstar. King was responsible for determining whether the load was properly secured and safe for transportation, in compliance with the FMCSR.

The following morning, King arrived with the load of tanks at the AmeriGas facility in Fontana. He removed all of the securement straps as an AmeriGas employee prepared to unload the tanks with a forklift. There were no chocks or wedges securing the tanks, contrary to Landstar's policy of making sure chocks were used and remained in place before removing securement straps from articles likely to roll, such as the tanks. Landstar failed to tell King this.

While Marvin Clark, an employee of Andrews Logistics, assisted in offloading the tanks, Clark negligently attached the hook at the end of a chain to one of the propane tanks, causing the tank to slip from the hook and jar the trailer. The jarring caused another tank to roll off the trailer and strike King, causing serious injuries.

Under standard industry safety practices, both straps across each row should not have been removed from each row until that particular row was ready to be offloaded. Also, the tanks should not have been unstrapped without chocks to prevent the tanks from rolling off the trailer. In addition, FMCSR part 393.106(c) (2009) mandates that cargo likely to roll, such as the tanks, must be restrained by chocks, wedges, a cradle or other means.

When King was struck by the falling tank, he was standing next to the trailer, rolling the securement straps with a hand winder. Landstar failed to apprise King that under standard industry safety practices, he should not have been standing next to the tanks while they were being offloaded.

■ FMCSR part 393.104(d) (2009) mandates that dunnage materials and materials used for blocking and bracing must not be used if damaged or defective such that it would compromise the effectiveness of the securement system. King inappropriately used a 77-inch-long beam, instead of a standard 96-inch-long beam, to support the top layer of tanks. The tank that fell off the

truck was supported by the shorter, 77-inch beam, which compromised the securement system and may have contributed to causing the accident.

A course on cargo securement on flatbed trailers was offered several times a week for the purpose of ensuring that all Landstar drivers of flatbed trailers were properly trained on safely securing cargo. Landstar had a duty to ensure that all its drivers were properly trained. Landstar was negligent in allowing King to transport loads without participating in its cargo securement course and/or without ensuring that he had adequate training and/or experience.

AmeriGas cites in the FACC several additional FMCSR provisions, including FMCSR parts 390.3, 390.11, 391.13, and 392.9 (2009). FMCSR part 391.13 (2009) mandates a carrier shall not permit a person to drive a truck unless the driver can determine, through experience or training, that the transported cargo is properly secured on the truck and the driver is familiar with methods and procedures for securing cargo. FMCSR part 392.9 (2009) prohibits a carrier from permitting a driver to drive a truck unless the cargo is properly secured. FMCSR part 390.11 (2009) provides that a carrier has a duty to ensure drivers observe all regulations. FMCSR part 390.3 (2009) requires that every driver and employee be instructed regarding all regulations and comply with them.

The FACC states: ". . . Landstar violated the FMCSR by permitting King to transport the propane tanks even though King lacked experience and/or training to properly secure the propane tanks and was not familiar with methods and procedures and/or regulations for securing the propane tanks." Landstar owed a legal duty to ensure the trailer was used in accordance with standard safety procedures and regulations. Landstar breached this duty, and the breach caused King's injuries.

The FACC additionally contains allegations in support of the allegation King was an employee of Landstar and that Landstar did not have workers' compensation insurance coverage for King. The Kings' and AmeriGas's claims against Landstar therefore allegedly were not subject to the workers' compensation exclusive remedy bar. As a consequence, AmeriGas was entitled to indemnification for the amount it paid to the Kings in the underlying personal injury action. AmeriGas also asserted it was entitled to contribution from Landstar in an amount proportionate to Landstar's comparative fault. AmeriGas requested in its declaratory relief cause of action that the court determine the relative comparative degree of fault of each party for purposes of comparative contribution to the total settlement.

c. *Negligence Liability Based on Duty Owed to Independent Contractors*

We reject AmeriGas's contention that it alleged in its FACC the alternative theory that Landstar owed King, as an independent contractor, a nondelegable

duty of care, which Landstar breached by failing to adequately train King. Such theory is not alleged in the FACC.

AmeriGas alleges in the FACC that, "despite Landstar's contention that King was an employee of an independent contractor, King was in fact an employee of Landstar." AmeriGas thereafter alleges numerous facts in support of the allegation that King was an employee. There are no alternative allegations that King was an independent contractor or that Landstar owed King, as an independent contractor, a nondelegable duty of care or breached such duty. Landstar thus was not required to address or refute common law negligence liability based on King allegedly being an independent contractor.

d. *Violation of the FMCSR*

AmeriGas argues summary judgment was improper because AmeriGas's alternative theory of liability based on Landstar violating the FMCSR was not addressed or refuted in Landstar's summary judgment motion. We agree.

Landstar, which operates as a motor carrier engaged in the movement of cargo, is subject to the federal Motor Carriers Act (Act) (49 U.S.C. § 14101 et seq.)[2] and regulations promulgated under the Act, referred to as the FMCSR. The current version of section 14102 of the Act and related regulations have not changed significantly. (See *Saullo v. Douglas* (Fla.Dist.Ct.App. 2007) 957 So.2d 80, 82–85 (*Saullo*), for a general history of the federal regulatory scheme relating to federal motor carrier regulation.)

Former section 11107 (now § 14102) of the Act provided that the Interstate Commerce Commission (ICC) could issue regulations requiring motor carriers to utilize written truck leases. The FMCSR required the leases to provide that the carrier had exclusive possession, control, and use of the equipment (trucks) and assume complete responsibility for its operation for the duration of the lease. (49 C.F.R. § 376.12(c)(1) (2009), formerly codified as 49 C.F.R. § 1057.12(c)(1) (1996).)

The reason for enacting these regulations was that, "During the first half of the twentieth century, interstate motor carriers attempted to immunize themselves from liability for negligent drivers by leasing trucks and nominally classifying the drivers who operated the trucks as 'independent contractors.' [Citations.] In order to protect the public from the tortious conduct of the often judgment-proof truck-lessor operators, Congress in 1956 amended the Interstate Common Carrier Act to require interstate motor carriers to assume full direction and control of the vehicles that they leased 'as if they were the

---

[2] Reference in this opinion to the Act is to title 49 of the United States Code.

owners of such vehicles.' [Citations.] The purpose of the amendments to the Act was to ensure that interstate motor carriers would be fully responsible for the maintenance and operation of the leased equipment and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred, and providing financially responsible defendants." (*Morris v. JTM Materials, Inc.* (Tex.App. 2002) 78 S.W.3d 28, 37–38, fn. omitted.)

In 1992, the ICC added subparagraph (4) to FMCSR former part 1057.12(a) (1992), now part 376.12(c) (2009). Paragraph (4) stated: "Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 11107 [(now § 14102)] and attendant administrative requirements." Under this new provision, independent contractor relationships between a carrier and driver/owner became explicitly authorized by the regulations. This did not, however, eliminate carrier responsibility and liability for the use of leased trucks under the federal regulatory scheme.

According to the ICC, "The purpose of the amendment is to give notice to the courts and workers' compensation or other administrative tribunals who have ruled otherwise that, in requiring that a lease provide for the lessee's 'exclusive possession, control, and use' of the equipment provided by the lessor, *it is not the intention of the Commission's regulations to define or affect the relationship between a motor carrier lessee and an independent owner-operator lessor.*" (Petition to Amend Lease and Interchange of Vehicle Regulations, 57 Fed.Reg. 32905 (July 24, 1992), italics added.)

The ICC further stated that the amendment adding "a specific statement in the regulations was found to be necessary because certain State courts and administrative tribunals have determined that the regulations affect the relationship between the lessee and lessor," which was not the intention of the ICC in enacting the FMCSR. (Petition to Amend Lease and Interchange of Vehicle Regulations, 57 Fed.Reg. 32905 (July 24, 1992); see also *Simpson v. Empire Truck Lines, Inc.* (5th Cir. 2009) 571 F.3d 475, 477 (*Simpson*); 62 Fed.Reg. 15417 (Apr. 1, 1997).)

The ICC was abolished in 1996, and replaced by the Secretary of Transportation. Section 11107 of the Act was reenacted substantially unchanged as 49 United States Code section 14102. (*Simpson, supra*, 571 F.3d at p. 477; *Saullo, supra*, 957 So.2d at p. 83, fn. 2.)

Section 14102(a)(4) of the Act provides: "The Secretary [of Transportation] may require a motor carrier . . . that uses motor vehicles not owned by it to

transport property under an arrangement with another party to—[¶] . . . [¶] . . . have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier." (49 U.S.C. § 14102(a)(4).) Such requirements are set forth in the FMCSR.

In addition, section 14704(a)(2) of the Act provides: "A carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."

*Application of the Act and FMCSR*

AmeriGas argues that it alleged in the FACC the alternative theory that Landstar violated the FMCSR parts 376.12, 390.3, 390.11, 392.9, 391.13, 393.104(d) and 393.106(c) (2009), and Landstar did not address this theory in its summary judgment motion. We agree.

In response to AmeriGas's argument on appeal relating to liability based on the FMCSR, Landstar argues that summary judgment evidence conclusively refuted liability based on the FMCSR since "the injuries to King could not have occurred in the absence of King's own affirmative conduct." Landstar adds that AmeriGas never argued that Landstar had "independent negligence conduct, separate and apart from King." We find these arguments unpersuasive, particularly since Landstar did not even address the FMCSR theory in its summary judgment motion.

In determining whether AmeriGas alleged a viable alternative claim based on the FMCSR, we look to the allegations in the FACC and then consider whether the law supports a claim against Landstar based on the factual allegations. If such a claim is viable and Landstar has not negated it, the trial court erred in granting summary judgment.

Looking to the pleadings, we conclude that AmeriGas has adequately alleged the alternative theory that Landstar violated the FMCSR. AmeriGas alleges in the FACC that King's injuries were caused, not only by his own acts, but also by Landstar's violations of various provisions of the FMCSR, including safety regulations requiring Landstar to train King on how safely to load and unload gas tanks transported on a flatbed trailer. AmeriGas alleges that the FMCSR violations caused or contributed to King's injury.

■ Whether King was an employee or independent contractor, as defined under state law, is not determinative of liability under the Act and FMCSR

since under the Act and FMCSR, a driver is defined as an "employee" of a carrier, regardless of whether the driver is an employee or independent contractor under state law. (FMCSR, § 390.5 (2009); 49 U.S.C. § 31101.)

Under FMCSR part 390.5 (2009), an "employee" is broadly defined as including "a driver of a commercial motor vehicle (*including an independent contractor while in the course of operating a commercial motor vehicle*) . . . ." (49 C.F.R. § 390.5 (2009), italics added.) Section 31100 of the Act likewise defines an "employee" as "a driver of a commercial motor vehicle (*including an independent contractor* when personally operating a commercial motor vehicle) . . . ." (49 U.S.C. § 31101(2), italics added.) Thus, under the Act and FMCSR, the trial court's finding that it was undisputed King was an employee was not a valid ground for granting summary judgment, assuming a claim under the FMCSR is a viable theory of recovery.

The court in *Perry v. Harco National Ins. Co.* (9th Cir. 1997) 129 F.3d 1072, 1075 (*Perry*), noted, however, "A split in the circuits exists regarding whether motor carriers are liable under the Motor Carrier Act for injuries to drivers of leased trucks and not just to members of the public. *Compare Johnson v. S.O.S. Transport*, 926 F.2d 516, 517 (6th Cir. 1991) (finding a cause of action), *with White v. Excalibur Ins. Co.*, 599 F.2d 50, 53–54 (5th Cir. 1979) (finding no cause of action). [Fn. omitted.] [¶] The Ninth Circuit has never decided whether the federal regulatory scheme creates a cause of action against motor carriers. We decline to do so here." (*Perry*, at p. 1075; see also *Marrier v. New Penn Motor Express, Inc.* (D.Vt. 2001) 140 F.Supp.2d 326, 328–329 [holding there is a private cause of action for personal injury]; *Crosby v. Landstar* (D.Del., June 21, 2005, No. Civ. 04-1535-SLR) 2005 WL 1459484, p. *2 [stating § 14704 of the Act was intended to provide for private enforcement of provisions of the Act in court, but holding § 24704 of the Act does not allow negligence claims]; *Jones v. D'Souza* (W.D.Va., Sept. 11, 2007, Civ. Action No. 7:06CV00547) 2007 WL 2688332, p. *7; *Schramm v. Foster* (D.Md. 2004) 341 F.Supp.2d 536, 547; *Stewart v. Mitchell Transport* (D.Kan. 2002) 241 F.Supp.2d 1216, 1219–1221 [holding that § 14704(a)(2) of the Act does not create a private cause of action for personal injury].)

While *Perry* did not resolve this split arising from *White v. Excalibur Ins. Co., supra*, 599 F.2d at pages 53–54 (*White*) and *Johnson v. S.O.S. Transport, supra*, 926 F.2d 516, 517 (*Johnson*), since it was unnecessary to do so, the *Perry* court noted there are two purposes of the Act: (1) "[T]o protect members of the public from motor carriers' attempts to escape liability for the negligence of drivers by claiming their drivers were independent contractors" (*Perry, supra*, 129 F.3d at p. 1074) and (2) "to provide 'enhanced protection of the health of commercial motor vehicle operators' " (*ibid.*).

The court in *White, supra,* 599 F.2d 50, focused on the first purpose of the regulatory scheme, public safety, without considering the second purpose, driver safety. In *White,* a driver of a truck leased to the carrier, was killed in a collision. At the time of the collision, the decedent was sleeping in the truck's cab while a codriver was driving the truck. The decedent's mother sued the carrier's insurer to recover on a wrongful death judgment. (*Id.* at p. 51.) The trial court denied relief under the carrier's policy and the *White* court affirmed based on the State of Georgia's workers' compensation exclusive remedy doctrine. (*Ibid.*)

In reaching its decision, the *White* court noted that, because under the Act and FMCSR the carrier had "a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles." (*White, supra,* 599 F.2d at p. 53.)

The *White* court further explained that "The statutory employee status created by federal law may affect employer-employee relationships under otherwise controlling state statutes where direction and control of the worker by the federally regulated employer are central to the regulatory program. . . . We have previously concluded that the Georgia Workmen's Compensation Law may be applied to such a mutation. . . . [B]ecause Terry Wright was a statutory employee of Superior by virtue of 49 U.S.C. § 304(e) [(now 49 U.S.C. § 14102)], his mother is barred by Georgia law from seeking a remedy apart from workmen's compensation. Superior [(the carrier)] has workmen's compensation insurance, and has admitted its compensation liability to Mrs. White and, of course, to all statutory employees injured in its service." (*White, supra,* 599 F.2d at p. 53, citation omitted.)

In *White,* the court limited the carrier's liability to employer liability under state workers' compensation law, assuming the Act mandated that a carrier's drivers are statutory employees under both the federal regulatory scheme and state workers' compensation law. Apparently, because of this misconception, FMCSR part 376.12(c)(4) (2009) was thereafter added in 1992 to clarify that the FMCSR truck lease requirements did not dictate the nature of the carrier/driver relationship under state law. Even though a driver is deemed to be a statutory employee of the carrier under the FMCSR, this does not preclude a driver from being an independent contractor under state law for purposes of workers' compensation coverage.

Perhaps because of the confusion created by the FMCSR leasing requirements and the conflict between the rulings in *White, supra,* 599 F.2d 50, and *Johnson, supra,* 926 F.2d 516, in construing the FMCSR, the ICC amended

the leasing regulations in 1992 to add paragraph (c)(4) of FMCSR part 376.12 (2009). As noted by the court in *Simpson, supra,* 571 F.3d 475, decided by the same circuit as *White, White* was superseded by the addition of subdivision (c)(4) of FMCSR part 376.12 (2009), such that the Act, FMCSR, and requisite lease language mandated under FMCSR part 376.12(c)(1) (2009) no longer automatically conferred on the driver employee status under state law when the facts of the driver's working relationship with the carrier do not support employee status under the state law as to workers' compensation coverage. (*Simpson, supra,* 571 F.3d at pp. 477–478.)

 Thus, even though under FMCSR part 376.12(c)(1) (2009) a truck lease must contain language that the carrier has exclusive possession, control, and use of the leased truck, and the carrier is completely responsible for the operation of the truck, these mandatory lease provisions do not transform an agreed upon independent contractor relationship between the carrier and truck owner/operator into an employee relationship under state law. (FMCSR, § 376.12(c)(4) (2009).)

We further note that *White, supra,* 599 F.2d 50, is factually distinguishable in that the mother of the decedent driver in *White* did not in the underlying action secure a judgment against the carrier. The *White* court stated that before the mother could recover from the carrier's insurer on the underlying judgment, the carrier had to be adjudicated liable. (*Id.* at p. 55.) In *White* there were no allegations the carrier violated the FMCSR or committed any wrongdoing, unlike in the instant case. Also, the instant case does not involve plaintiff in the underlying action (the Kings) seeking to recover on the Kings' underlying judgment. Rather, here, AmeriGas is seeking equitable indemnity based on the carrier violating the FMCSR. The *White* court did not address the issue of whether there was a viable claim based on the carrier violating the FMCSR.

Although the court in *White* concluded in part there was no claim under the Act (§ 14102) because the decedent was not a member of the public or an intended beneficiary under the Act as a carrier employee (*White, supra,* 599 F.2d at pp. 55–56), *White* did not consider or discuss the second purpose of the Act, that of protecting the driver. This, most likely, was because there were no allegations that the decedent was harmed due to safety violations committed by the carrier. *White* thus is not persuasive in determining whether AmeriGas has a viable claim under the FMCSR.

*Johnson, supra,* 926 F.2d 516, also decided before the Act was amended adding FMCSR part 376.12(c)(4) (2009), involved FMCSR safety violations committed by the carrier, which allegedly caused or contributed to the truckdriver's death. *Johnson,* which is factually similar to the instant case,

held that the lessee carrier was liable under the FMCSR to its injured nonemployee driver for defective equipment on a leased truck, even though the carrier lessee had no liability at common law. (*Johnson, supra*, 926 F.2d at p. 518.) The *Johnson* court reasoned that the purpose of the regulatory scheme was, not only public safety, but also driver safety. (*Id.* at p. 524.)

In *Johnson, supra*, 926 F.2d 516, the administratrix of the truckdriver's estate brought a wrongful death action against the motor carrier. (*Id.* at p. 517.) The plaintiff administratrix alleged that the carrier had negligently maintained and inspected the truck, causing it to leave the road and kill the driver. The federal district court in Kentucky granted the carrier's motion for summary judgment, concluding that, regardless of whether there was workers' compensation insurance, summary judgment should be granted as to the plaintiff's claim the carrier violated the FMCSR. (926 F.2d at p. 517.)

On appeal, the *Johnson* court reversed, holding that the driver was an intended beneficiary of FMCSR provisions requiring the carrier to assume control over the truck and bear responsibility for any truck defects and negligence in the truck's operation. (*Johnson, supra*, 926 F.2d at p. 518.) The *Johnson* court concluded the "federal regulatory design extends protection to drivers of common carriers." (*Ibid.*) The court further noted in a footnote that the Act "provides for a private right of action for persons who sustain damages 'as a result of an act or omission of [a] carrier in violation of this subtitle.' [Citations.] Thus, the controlling question in either event is whether Mattingly, as the driver of a vehicle leased by a certified carrier, is within the protection of the federal regulatory scheme." (926 F.2d at p. 521, fn. 11, citing 49 U.S.C. former § 11705, now 49 U.S.C. § 14704.)

 Concluding the driver was protected under the FMCSR and the carrier could be found liable for violating the FMCSR, the *Johnson* court explained: "In Chapter 34 of Title 49, Congress has explicitly addressed the problem of motor carrier safety, including, more specifically, the safety of operators of vehicles. [Citation.] A stated purpose of Chapter 34 is 'to minimize dangers to the health of operators of commercial motor vehicles[.]' [Citation.] The chapter, which directs the Secretary of Transportation to establish and revise safety regulations pertaining to commercial trucks and buses [citation] is based upon a Congressional finding that 'enhanced protection of the health of commercial motor vehicle operators is in the public interest[.]' [Citation.] It also requires: [¶] Each employer and employee [to] comply with regulations pertaining to commercial motor vehicle safety issued by the Secretary [of Transportation] under this chapter which are applicable to his or her own actions and conduct." (*Johnson, supra*, 926 F.2d at pp. 523–524, fns. omitted.)

The *Johnson* court noted that, to deny the driver's estate an opportunity to seek recovery against the lessee carrier would " 'undercut the primary purpose of the regulatory design.' [Citation.] Accordingly, because drivers are intended beneficiaries of this regulatory design, we conclude that the district court erred in granting summary judgment in favor of [the carrier]." (*Johnson, supra,* 926 F.2d at p. 524.)

As in *Johnson, supra,* 926 F.2d 516, in the instant case, we conclude King, as a driver, is an intended beneficiary of the FMCSR, and therefore AmeriGas can seek recovery against Landstar for violating regulations that caused or contributed to King's injury.

Whether a driver is an employee of the carrier or an independent contractor under state law is not dispositive for purposes of summary judgment since the FMCSR pertains to both equally. (Act, 49 U.S.C. § 31100; FMCSR, § 390.5 (2009).) It is apparent that the intent of the Act and FMCSR is to protect drivers, regardless of whether they are employees or independent contractors under state law, and to hold carriers accountable for FMCSR violations resulting in harm to drivers, when no other recourse is available.[3]

█ Because a triable issue exists as to whether King was an employee under state law, and because AmeriGas alleged a viable claim under the FMCSR, we conclude the trial court erred in granting Landstar's summary judgment motion on AmeriGas's FACC.[4]

---

[3] We do not address the issue of whether state workers' compensation law is preempted by the federal regulatory scheme under the Act and FMCSR since it is unnecessary to do so in deciding the instant case.

[4] At oral argument, Landstar for the first time asserted that AmeriGas's statutory claim, based on violations of the Act and FMCSR, did not constitute a viable cause of action because the truck was not in transit at the time of the accident. Landstar did not cite any authority supporting this proposition. In addition, Landstar cited for the first time three federal out-of-state cases in support of the proposition that there was no private cause of action under the Act and FMCSR.

"As a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal.' [Citation.]" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664].) Also, "[a]bsent a sufficient showing of justification for the failure to raise an issue in a timely fashion, we need not consider any issue which, although raised at oral argument, was not adequately raised in the briefs." (*Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226 [86 Cal.Rptr.2d 209].) Furthermore, when counsel asserts a point but fails to support it with reasoned argument and citations to authority, the court may deem it to be forfeited, and pass it without consideration. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

We do not consider Landstar's new arguments because Landstar did not raise them either in the trial court or in Landstar's respondent's brief on appeal. Landstar also did not provide this court or AmeriGas with any notice before oral argument that Landstar intended to rely on the newly cited cases. We are not aware of any justification for Landstar's failure to raise the new issues and additional cases in a timely fashion.

## 6. <u>Disposition</u>

The judgment is reversed. AmeriGas is awarded its costs on appeal.

Ramirez, P. J., and Miller, J., concurred.